Edward C. **STENGEL**, Plaintiff,

v.

John J. **CALLAHAN**, Commissioner of Social Security, Defendant.

No. 96 C 8450.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 6, 1997.

---

**1156**

Dennis R. Schlemmer, Marion D. Hefner, Leydig, Voit & Mayer, Ltd., Chicago, IL, for Edward C. Stengel.

Edward C. Stengel, Chicago, IL, pro se.

Samuel D. Brooks, U.S. Attorney's Office, Chicago, IL, for U.S.

Lucinda A. Love, U.S. Dept. of Justice, Washington, DC, for Shirley Chater.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Edward Stengel brought suit against John J. Callahan, in his official capacity as Commissioner of Social Security, after the Commissioner terminated Stengel's disability benefits under the Social Security Act (the "Act"). Stengel challenges the constitutionality of 42 U.S.C. § 423(d)(2)(C), which authorized the Commissioner to deny Stengel disability benefits because Stengel's alcoholism was a material factor in the initial determination of his disability. In addition, Stengel charges that the Commissioner violated his statutory duties in finding that Stengel no longer qualified for disability benefits under the Act.

Stengel incorporated these allegations into a five count complaint. Specifically, Count I alleges that when applied to Stengel, § 423(d)(2)(C) violates his equal protection rights incorporated into the Due Process Clause of the Fifth Amendment because the law distinguishes between alcoholism and other diseases. Count II details Stengel's facial challenge to the amendment, alleging that § 423(d)(2)(C) violates the Equal Protection Clause because it precludes the Commissioner from determining that a person suffering from alcoholism is disabled even if other factors would, alone or in total, warrant such a determination. Pl.'s Am. Compl. ¶ 24–26. Count III alleges that as applied to Stengel, § 423(d)(2)(C) violates the equal protection guarantees of the Fifth Amendment because it precludes the Commissioner from considering whether Stengel may be disabled by virtue of diseases or disorders other than alcoholism or drug addiction. *Id.* ¶ 30. Count IV alleges that as applied to Stengel, § 423(d)(2)(C) violates his substantive due process rights under the Fifth Amendment because his denial of benefits is not rationally related to any governmental interest. *Id.* ¶ 35. Finally, Count V charges that the Commissioner has violated his statutory duties by denying Stengel disability benefits based on the unconstitutional mandate of § 423(d)(2)(C). *Id.* ¶ 39. Stengel seeks declaratory, injunctive, and any further relief that this Court deems necessary.

This matter is currently before the Court on defendant's motion to dismiss all counts of plaintiff's amended complaint, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). For the reasons set forth below, we grant defendant's motion to dismiss.

## BACKGROUND

Edward Stengel worked as a clerical worker for several years before applying for disability benefits under the Social Security Act. Pl.'s Am. Compl. *Id.* ¶ 5. The Commissioner determined that Stengel's alcoholism rendered him disabled under Title II of the Act and awarded Stengel benefits. at *Id.* ¶ 8. Stengel received disability benefits from January of 1989 until January of 1997, and came to rely on such benefits to support himself. *Id.* at ¶¶ 12, 13.

In 1996, Congress amended the Act to deny benefits to claimants whose "alcoholism or drug addiction [is] . . . a material factor to the [Commissioner's] determination that the

individual is disabled." [1] at *Id.* ¶ 14, citing 42 U.S.C. § 423(d)(2)(C). Alcoholism is considered "material" to a disability determination if the evidence shows that the claimant would not be disabled if he stopped using alcohol. H.R.Rep. No. 104–379, pt. II, at 16 (1995). Consequently, on June 12, 1996, the Commissioner sent Stengel a letter notifying him that he would terminate Stengel's disability benefits effective January 1, 1997. Pl.'s Am. Compl. at *Id.* ¶ 16. The letter explained that the Commissioner's original disability determination was based materially upon Stengel's alcoholism, which was no longer a permissible consideration under the newly enacted amendment. *Id.* at Ex. A. In addition, the letter informed Stengel that if he believed he was entitled to disability benefits for reasons other than his alcoholism, he should contact the Social Security Administration within sixty days of receiving the letter. *Id.*

Stengel appealed this determination, presenting information regarding his other allegedly disabling conditions. Pl.'s Sur. at p. 2. The Commissioner initially rejected Stengel's claim that such conditions rendered Stengel disabled, and outlined the administrative appeals process should Stengel choose to challenge the Commissioner's determination. *Id.* The record does not reveal the current status of Stengel's claim. However, on February 21, 1997, Stengel filed this action, challenging the constitutionality of the amendment.[2]

## LEGAL STANDARDS

Defendant brings this motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), defendant challenges the Court's subject matter jurisdiction over Stengel's claim. Under Rule 12(b)(6), defendant argues that all counts should be dismissed for failure to state a claim upon which relief can be granted. The standard applied to each motion is similar. *Freiburger v. Emery Air Charter, Inc.,* 795

F.Supp. 253, 256 (N.D.Ill.1992). Because a motion to dismiss does not test the merits of the suit, all well-pleaded facts are taken as true, all reasonable inferences are drawn in favor of the plaintiff, and all ambiguities are resolved in the plaintiff's favor. *Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992). With these standards in mind, we evaluate the Commissioner's motion to dismiss Stengel's amended complaint

## ANALYSIS

Initially, the Commissioner charges that this Court does not have subject matter jurisdiction over this action because Stengel failed to exhaust his administrative remedies. The Commissioner argues that any action arising under the Act must be brought pursuant to § 405 of the Act, which requires a final administrative determination prior to judicial review. Stengel, however, failed to obtain a final administrative determination prior to filing this action. The Commissioner then challenges the merits of Stengel's claims, contending that the Court should dismiss the action because Stengel cannot demonstrate that Congress' decision to reallocate limited federal resources lacks a rational basis. In addition, the Commissioner asserts that Stengel has neither a property interest in nor a fundamental right to the receipt of benefits, which would trigger any substantive due process rights when the benefits were terminated. Finally, the Commissioner argues that the termination of Stengel's benefits is wholly consistent with the Commissioner's statutory duties. We will address each of the Commissioner's arguments in turn.

### I. CHALLENGE TO SUBJECT MATTER JURISDICTION

As a party seeking to invoke the jurisdiction of this Court, Stengel has the burden of establishing that jurisdiction exists. *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 278, 57 S.Ct. 197, 200–01, 81 L.Ed. 183 (1936); *More & More Entertainment, Inc. v. Scotti*

---

1. In 1994, Congress enacted a similar, but less severe, amendment to the Act, limiting benefits paid to alcoholics and drug addicts to a period of no more than 36 months. See Pub.L. No. 103–296 § 201; 108 Stat. 1490–1506 (Aug. 15, 1994).

2. Stengel filed a complaint *pro se* on December 23, 1996; however, this complaint was dismissed without prejudice as being insufficiently plead. Thereafter, this Court appointed counsel for Stengel. Appointed counsel filed the amended complaint presently before the Court.

*Bros. Records,* 1996 WL 417551 (N.D.Ill. July 23, 1996). Without evidence raising a fact question as to subject matter jurisdiction, the court's inquiry is limited. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). The court must simply ask whether the complaint's allegations, construed in a light most favorable to the plaintiff, are sufficient to support subject matter jurisdiction. *Id.*

## A. JURISDICTIONAL BASIS FOR BRINGING THIS CLAIM

■ . We must first determine the jurisdictional basis for Stengel's claim. Stengel challenges the constitutionality of an amendment to the Act. Consequently, he argues that federal question jurisdiction is a valid basis to bring his action before this court. He also argues that because he is seeking declaratory relief this court has jurisdiction pursuant to 28 U.S.C. §§ 2201 & 2202. Finally, Stengel asserts jurisdiction under 28 U.S.C. § 1361, to the extent that he seeks an order requiring the Commissioner to perform his statutory duties.

The Commissioner argues that because Stengel's action arises under the Act, this Court can have jurisdiction only under § 405. *See* 42 U.S.C. § 405(g), (h) (1996). Section 405 requires claimants to obtain a final decision from the Commissioner prior to filing suit in court. *Id.* The Commissioner contends that Stengel's failure to comply with the Act's exhaustion requirement bars this Court's review of Stengel's claim. To determine whether § 405 is the proper jurisdictional basis for Stengel's claim, we must decide whether Stengel's claims "arise under" Title II of the Act.

The Supreme Court addressed this issue in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The Court held that a challenge to the constitutionality of the Act necessarily "arises under" the Act, requiring the plaintiff to bring the cause of action under the jurisdictional grant of § 405. *Id.* at 762, 95 S.Ct. at 2465. In *Salfi,* the plaintiff questioned the constitutionality of the "duration of relationship" requirement

applicable to widows and children seeking benefits under the Act. *Id.* at 754, 95 S.Ct. at 2461. The plaintiff asked the Court for declaratory and injunctive relief, as well as damages equal to the amount of the withheld benefits. *Id.* The plaintiff then raised constitutional questions, relying on § 1331 as the basis for jurisdiction. *Id.* at 755, 95 S.Ct. at 2462. The plaintiff argued that § 405's federal question prohibition affects only claims arising under Title II of the Act, and that her claim arose under the Constitution, not Title II. *Id.* at 760, 95 S.Ct. at 2464. In rejecting this argument, the Court noted that although this claim did arise under the Constitution, the claim also arose under the Act. *Id.* The Court explained that the requirements of § 405 ensure an efficient resolution of all claims, stating that § 405 does:

> not preclude constitutional challenges. [It] simply require[s] that they be brought under jurisdictional grants contained in the Act, and thus in conformity with the same standards which are applicable to nonconstitutional claims arising under the Act. The result is not only of unquestionable constitutionality, but it is also manifestly reasonable, since it assures the Secretary the opportunity prior to constitutional litigation to ascertain, for example, that the particular claims involved are neither invalid for other reasons nor allowable under other provisions of the Social Security Act.

*Id.* at 762, 95 S.Ct. at 2465.

The Supreme Court reaffirmed *Salfi's* broad reading of § 405 in *Heckler v. Ringer,* 466 U.S. 602, 615, 104 S.Ct. 2013, 2021–22, 80 L.Ed.2d 622 (1984). Significantly, the *Ringer* Court determined that the type of relief a plaintiff seeks is irrelevant in determining whether § 405 is the proper jurisdictional basis for a claim; that is, if a plaintiff is challenging the constitutionality of the Act, no matter what type of relief is sought, the claim falls within § 405's realm. *Id.* The Court held that § 405 covered the claimants' requests for declaratory and injunctive relief:

> It is of no importance that respondents here, unlike the claimants in *Weinberger v. Salfi,* sought only declaratory and injunctive relief and not an actual award of benefits as well.... Had our holding in [*Sal-*

*fi* ] turned on the fact that claimants there did seek retroactive benefits, we might well have done as the dissent in that case suggested and held that § 405(h) barred federal-question jurisdiction only over claimant's specific request for benefits, and not over claimant's declaratory and injunctive claims as well."

*Id.* at 615–16, 104 S.Ct. at 2022.

In the instance case, just as in *Salfi* and *Ringer*, Stengel's cause of action must be brought under the jurisdictional grant of § 405. Stengel's claim likewise challenges the constitutionality of a certain provision of the Act. In addition, like the plaintiffs in *Salfi* and *Ringer*, Stengel is seeking declaratory and injunctive relief as well as an order requiring the Commissioner to pay all past and future benefits to which Stengel is entitled. As *Ringer* points out, regardless of what type of relief Stengel seeks in conjunction with his constitutional challenge, § 405 is still the proper basis for jurisdiction. As such, we need not address Stengel's alternative bases for jurisdiction.

## B. WAIVER OF EXHAUSTION

■ Having determined that § 405 is the proper jurisdictional basis for Stengel's claim, we must now decide whether Stengel has met § 405(g)'s "final decision" requirement. To obtain a final decision from the Commissioner, a plaintiff must exhaust his administrative remedies by proceeding through the entire administrative process, culminating in a ruling by an administrative law judge. *See Bowen v. City of New York,* 476 U.S. 467, 482, 106 S.Ct. 2022, 2031, 90 L.Ed.2d 462 (1986). The final decision requirement consists of two elements. *Johnson v. Sullivan,* 922 F.2d 346, 352 (7th Cir. 1990). A plaintiff satisfies the first requirement by filing a claim with the Commissioner. *Id.* This is a jurisdictional requirement and may not be waived by the Commissioner. *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976). The parties do not dispute that Stengel has complied with this requirement by filing his claim with the Commissioner.

■ The second requirement is that the claimant exhaust his administrative remedies. *Id.* This requirement is not jurisdictional in nature and may be waived by the Commissioner or a court. *Bowen,* 476 U.S. at 483, 106 S.Ct. at 2031–32. Waiver of the exhaustion requirement is appropriate only where: 1) the plaintiff's suit involves a collateral attack rather than one on the merits; 2) the plaintiff would be irreparably harmed if the exhaustion requirement is enforced; and 3) requiring the plaintiff to exhaust administrative remedies would not serve the purposes of exhaustion. *Marcus v. Sullivan,* 926 F.2d 604, 613 (7th Cir.1991). We address each element in turn.

### 1. COLLATERAL CLAIM

■ A plaintiff's claim is "collateral" if it is not essentially a claim for benefits, that is, the claim is not merely challenging the merits of the Commissioner's determination. *Johnson v. Sullivan,* 922 F.2d at 353. In *Bowen v. City of New York,* the Court held that federal claims alleging that the Commissioner failed to follow applicable regulations were collateral to benefits claims class members presented administratively in part because "the class members neither sought nor were awarded benefits in [court]." 476 U.S. at 483, 106 S.Ct. at 2032. Similarly, the Supreme Court has held that a plaintiff's "constitutional challenge [is] entirely collateral to his substantive claim for benefits." *Mathews,* 424 U.S. at 330, 96 S.Ct. at 900. Following Supreme Court precedent, the Seventh Circuit has stated that a claim is collateral when the "plaintiffs' claims are essentially to the policy itself, not its application to them, nor to the ultimate substantive determination of their benefits." *Johnson v. Sullivan,* 922 F.2d at 353. Given these interpretations, if Stengel's suit consisted solely of a constitutional challenge, the collateral claim prong would be satisfied here. However, the Commissioner argues that Stengel's claim is somewhat different because he seeks, in part, "an order requiring the Commissioner to pay or cause to be paid to Plaintiff all past and future benefits to which Plaintiff is entitled." Pl.'s Am. Compl. ¶¶ 22(c), 28(c), 32(c), 37(d), and 40(c). Consequently, plaintiff's action is not an exact parallel to *Bowen,* where the claimants did not seek an award of benefits.

Accordingly, we must determine whether Stengel's decision to seek injunctive relief causing benefits to be paid is fatal to his ability to satisfy the collateral claim prong.

The Commissioner cites *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), in support of the contention that Stengel's claim is not collateral. In *Ringer*, the respondents sought an injunction requiring the Commissioner to declare that a certain surgery was reasonable and necessary under the Act in addition to challenging the constitutionality of certain procedures. *Id.* at 612, 104 S.Ct. at 2020. The Court reasoned that the respondents' claims were not collateral to a substantive claim for benefits because "the relief that respondents [sought] to redress their supposed 'procedural' objections [was] the invalidation of the Commissioner's current policy and a 'substantive' declaration from her that the expense of [the surgery was] reimbursable under the Medicare Act." *Id.* The Court further stated that all of the plaintiffs' claims were "inextricably intertwined" with the claim for benefits because the claims were no more than "at bottom, a claim that they should be paid for their ... surgery." *Id.* at 614, 104 S.Ct. at 2021. The Commissioner argues that *Ringer* is controlling in the instant case because Stengel seeks an order to pay him benefits.

However, *Ringer* is distinguishable because Stengel's claim does not compel this Court to make a substantive determination as to benefits. In *Ringer*, the constitutional claim was intertwined with a claim for benefits because the plaintiffs were really requesting that the Commissioner change a statutory policy to allow payment for a medical procedure "so that respondents simply [would] not have to resort to the administrative process." *Id.* at 614, 104 S.Ct. at 2021. In contrast, Stengel's challenge to the constitutionality of this statute is not at heart a substantive claim for benefits.[3] *Salfi*, 422 U.S. at 765, 95 S.Ct. at 2466–67. Admittedly, Stengel is requesting "that Defendant pay or cause to be paid ... all ... benefits to which Plaintiff is entitled," and this Court recog-

nizes that the Seventh Circuit has relied upon the fact that the plaintiff was not seeking an ultimate determination as to the award of benefits in ruling that an action was collateral. *See, e.g., Johnson v. Sullivan*, 922 F.2d at 353. However, we view Stengel's claim for relief not as one requiring an ultimate determination of benefits, but merely a request for a reexamination such as that requested in *Bowen*.

In *Bowen*, plaintiff class members brought suit against the Commissioner because of a system-wide policy that was allegedly contrary to applicable regulations. 476 U.S. at 473, 106 S.Ct. at 2026. In finding that the district court had correctly concluded that waiver of exhaustion was appropriate, the Court reasoned that

> the relief afforded by the District Court was fully consistent with the policies underlying exhaustion. The court did not order that class members be paid benefits. Nor does its decision interfere with the agency's role as the ultimate determiner of eligibility under the relevant statutes and regulations. Indeed, by ordering simply that the claims be reopened at the administrative level, the District Court showed proper respect for the administrative process.

*Id.* at 485, 106 S.Ct. at 2032. Accordingly, the Court focused upon the lack of judicial interference required into matters properly left to the relevant administrative agency in ruling that plaintiffs' claims were collateral.

In the instant case, "[t]he question, thus, is not whether another consideration of the merits of plaintiff['s] claims would be required by our decision, but rather whether plaintiff's [constitutional] challenge ... is bound up with the merits so closely as to constitute" judicial interference in the agency process. *Johnson v. Sullivan*, 922 F.2d 346, 353 (7th Cir.1990). Stengel's claim does not present such a case of judicial interference. Unlike the plaintiffs in *Ringer*, Stengel asks only that if we determine that the amend-

---

**3.** In *Salfi*, although the Commissioner did not contest the exhaustion prerequisite, the Court decided the case. The claimant was seeking, among other things, damages equal to an award

of retroactive benefits. 422 U.S. at 755, 95 S.Ct. at 2462. The district ordered the Commissioner to pay retroactive benefits. *Id.*

ment is unconstitutional, we order the Commissioner to reexamine his claim. Thus, this is not a case like *Ringer* where the plaintiffs mixed a substantive claim for benefits with constitutional claims to avoid the administrative process. If Stengel were successful in this action, this Court would not perform the reexamination. Rather, we would order the Commissioner to address Stengel's eligibility in light of our ruling. *See also Beckless v. Heckler*, 622 F.Supp. 715, 718 (N.D.Ill.1985) ("A decision [that] ... may eventually lead to an award of benefits .... is nonetheless collateral."). Consequently, such an order would fall under the veil of *Bowen's* reasoning, satisfying the collateral prong of the tripartite test.

## 2. IRREPARABLE HARM

■ To satisfy the second prong of the waiver test, the irreparable harm requirement, the plaintiff must raise at least a colorable claim that requiring exhaustion would cause irreparable injury. *Briggs v. Sullivan*, 886 F.2d 1132, 1139 (9th Cir.1989). In *Schweiker v. Chilicky*, 487 U.S. 412, 428, 108 S.Ct. 2460, 2470, 101 L.Ed.2d 370 (1988), the Supreme Court found that economic harm resulting from the denial of benefits is significant, and cannot be remedied by a later restoration of benefits. Similarly, in *Eldridge*, the Supreme Court determined that "an erroneous termination [of benefits] would damage [the claimant] in a way not re-compensable through retroactive payments." 424 U.S. at 331, 96 S.Ct. at 901.

Following the Supreme Court's lead, numerous courts have held that suffering economic hardship from a lack of benefits while awaiting administrative review constitutes irreparable injury. *See, e.g., Marcus*, 926 F.2d at 614. This rationale stems from the fact "that [claimants] need those benefits ... to purchase food, shelter, medicine and life's other necessities." *Schweiker*, 487 U.S. at 428, 108 S.Ct. at 2470. The Seventh Circuit has also found that economic injury constitutes irreparable harm, reasoning that plaintiffs need the benefits for the very necessities of life. *Marcus*, 926 F.2d at 614; *see also Schoolcraft v. Sullivan*, 971 F.2d 81, 86–87 (8th Cir.1992); *Briggs*, 886 F.2d at 1140

(finding specifically that general economic hardship is enough to constitute irreparable harm).

In his complaint, Stengel alleges that he has come to rely on the continued receipt of these benefits. Drawing all reasonable inferences in a light most favorable to Stengel, we find that Stengel has properly alleged that he relics upon such benefits for the basic necessities of life. Consequently, Stengel satisfies the irreparable harm requirement.

## 3. PRACTICALITY ("FUTILITY")

The futility prong of the waiver test stresses that the "application of the exhaustion doctrine is intensely practical." *Bowen*, 476 U.S. at 484, 106 S.Ct. at 2032. "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefits of its experience and expertise, and to compile a record adequate for judicial review." *Salfi*, 422 U.S. at 765, 95 S.Ct. at 2467 (citing *McKart v. United States*, 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969)). These purposes have been served if the only issue before the court is the constitutionality of a statute, a matter beyond the Commissioner's jurisdiction. *Salfi*, 422 U.S. at 765, 95 S.Ct. at 2466–67. As the Supreme Court stated in *Bowen*, if a plaintiff alleges matters outside the discretionary realm of the Commissioner, further administrative proceedings would be futile. 476 U.S. at 485, 106 S.Ct. at 2032–33; *see also Marcus*, 926 F.2d at 604 (holding that claims of system-wide violations by the Commissioner satisfied the futility prong).

In the instant case, Stengel easily satisfies the futility prong. Stengel challenges a matter beyond the expertise and the authority of the Commissioner-the constitutionality of a statute. Furthermore, we can see no benefit in allowing the Commissioner to compile a more accurate record, as the only questions presented to this court are those of pure law. Consequently, because further administrative processes would not serve the purposes of exhaustion, the futility prong of the exhaus-

tion waiver requirement is satisfied. Given that Stengel has satisfied the requirements for waiver of exhaustion, we deny the Commissioner's motion to dismiss for lack of subject matter jurisdiction. Therefore, we proceed to evaluate the merits of Stengel's amended complaint.

## II. MOTION TO DISMISS ALL COUNTS

The Commissioner has brought a motion to dismiss all counts of Stengel's amended complaint pursuant to federal rule 12(b)(6) for failure to state a claim upon which relief can be granted. Initially, we note that Stengel challenges the constitutionality of the amendment under both the Equal Protection Clause and the Due Process Clause of the Fifth Amendment. The Supreme Court has stated that a statute that survives an equal protection challenge is *a fortiori* valid under the Due Process Clause:

> "[a]lthough the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is so unjustifiable as to be violative of due process.... Thus if a federal statute is valid under the equal protection component of the Fifth Amendment, it is perforce valid under the Due Process Clause of that Amendment."

*United States Railroad Retirement v. Fritz,* 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980); *see also Salfi,* 422 U.S. at 770, 95 S.Ct. at 2469 (highlighting the similar analysis employed to both equal protection and due process challenges to social welfare legislation). Therefore, we address Stengel's due process and equal protection challenges simultaneously.

The law is clear that unless a classification warrants some form of heightened review because it jeopardizes the exercise of a fundamental right or categorizes based on an inherently suspect characteristic, due process and the equal protection require only that the classification rationally further a legitimate governmental interest. *See Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 2331–32, 120 L.Ed.2d 1 (1992); *Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439–41, 105 S.Ct. 3249, 3253–56, 87 L.Ed.2d 313 (1985). In applying this level of review, the Supreme Court has stated that "social securi-

ty benefits are not contractual and may be altered or even eliminated at any time." *Fritz,* 449 U.S. at 174, 101 S.Ct. at 459. Accordingly, we reject Stengel's contention that he has a fundamental right to the continued receipt of disability benefits. *See Zipkin v. Heckler,* 790 F.2d 16, 18 (2nd Cir.1986) (finding that "[t]he withholding of a noncontractual benefit such as the Social Security retirement benefit is unconstitutional only where the statute manifests a patently arbitrary classification, utterly lacking in rational justification.") In addition, § 423(d)(2)(C) classifies individuals on the basis of being alcoholics or drug addicts, neither of which is a group that is entitled to heightened scrutiny under equal protection or substantive due process analysis. *See, e.g., Funbus Sys., Inc. v. C.P.U.C.,* 801 F.2d 1120, 1125–26 (9th Cir. 1986). Therefore, we find that the rational relationship test is the standard for reviewing both plaintiff's due process and equal protection claims, as Stengel has neither a fundamental right to receipt of the benefits nor is he a member of a suspect class.

■ Before applying the rational relationship test, we note that Congress is allowed extreme deference when allocating social welfare resources, and such allocations are granted a strong presumption of constitutionality. *See Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186 (1981); *Dandridge v. Williams,* 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). Governmental decisions to spend money to improve the public welfare are "not confided to the courts. The discretion belongs to Congress unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment." *Helvering v. Davis,* 301 U.S. 619, 640, 57 S.Ct. 904, 908, 81 L.Ed. 1307 (1937). With these principles in mind, we must determine whether the amendment is rationally related to a legitimate governmental interest.

### 1. RATIONAL RELATIONSHIP TEST

■ Under the rational relationship test, the Court's inquiry is twofold: 1) does the statute seek to achieve a legitimate government goal; and 2) is the statute rationally related to achieving this goal. The Eastern

District of California recently confronted a constitutional challenge to the same amendment in *Reeves v. Calhoun*, CIV–S–95–1546 (E.D.Ca.Ap.23, 1997). The court adopted the magistrate judge's determination that the amendment was rationally related to a legitimate governmental interest despite the plaintiff's equal protection challenge that the amendment improperly differentiated between alcoholics all other disabled individuals. *Id.* While we find the *Reeves* court's rationale persuasive, this is not the end of our inquiry.

Stengel argues that the instant case is distinguishable from *Reeves*, claiming that his challenge "focuses instead on the affirmative denial of legal protection to this class, a clearly distinct type of discrimination in light of the recent *Romer* decision." Pl.'s Sur. at p. 15 (citing *Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996)). Furthermore, Stengel contends that the plaintiff in *Reeves* failed to challenge the amendment's effect of precluding benefits to alcoholics with other disabilities, and the fact that recovering alcoholics neither abuse alcohol nor spend disability benefits to support a habit. While accepting Stengel's assertion that he presents challenges not addressed in *Reeves*, an analysis of Stengel's challenges similarly results in a finding of constitutionality.[4]

## A. LEGITIMATE GOVERNMENTAL INTEREST

As amended, 42 U.S.C. § 423(d)(2)(C) provides that "[a]n individual shall not be considered disabled for purposes of this subchapter if alcoholism or drug addition would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." Section 105 of Public Law 104–121 does not expressly set forth the objective of § 423(d)(2)(C). However, Congress enacted this provision with companion statutes that indicate a dual purpose of conserving limited resources while promoting rehabilita-

tive behavior among substance abusers. *See* P.L. 104–121 § 103 (1996). In addition, the House Report states that this law was enacted to remove "a perverse incentive that affronts working taxpayers and fails to serve the interests of addicts and alcoholics, many of whom use their disability checks to purchase drugs and alcohol, thereby maintaining their addictions." H.R. Rep. 104–379, at 20. Congress determined that the payment of disability benefits to alcoholics and drug addicts encouraged such recipients to continue their drug and/or alcohol addictions to keep receiving benefits. *Id.* The Commissioner adds that the amendment operates to deter drug and alcohol abuse by rerouting federal funds from awards of disability benefits to funding for state sponsored drug and alcohol treatment. *See* Pub.L. No. 104–121, § 105(d) (1996). The Supreme Court has determined that the deterrence of substance abuse is a legitimate governmental interest. *See, e.g., Sherbert v. Verner*, 374 U.S. 398, 403, 83 S.Ct. 1790, 1793–94, 10 L.Ed.2d 965 (1963).

In response, Stengel argues that the true purpose of the amendment is to single out substance abusers "for pursuing budgetary savings as well as a conservative moral agenda". Pl.'s Rsp. Br. at p. 13. Stengel asserts that Congress's attempt to save money by discriminating against this politically unpopular group "cannot constitute a legitimate governmental interest" under the Supreme Court's decision in *Romer v. Evans*, 517 U.S. 620, ——, 116 S.Ct. 1620, 1628, 134 L.Ed.2d 855 (1996). Pl.'s Rsp. Brf. at p. 24. However, Stengel cites no authority in support of his interpretation of the, amendment's purpose, contending only that the direct legislative history is too sparse to support the Commissioner's interpretation of the amendment. Rather, Stengel argues, this Court should examine the legislative activity surrounding the enactment of the amendment— that is, the enthusiasm surrounding the Contract with America [5]—to uncover the amendment's true insidious purpose.

---

4. Stengel has incorrectly cited *Romer* for the proposition that this Court should use a standard other than the rational basis of review. To the contrary, the Supreme Court used the rational basis standard of review in that case. *Romer*, 517 U.S. at ——, 116 S.Ct. at 1627.

5. This amendment was passed as part of the "Contract with America," a legislative agenda sponsored by the then newly elected Republican Congress.

We find that Stengel's argument is without support in law or the legislative history of the amendment. Such conclusory assertions will not survive a motion to dismiss. *See Maloney v. Washington*, 584 F.Supp. 1263, 1265 (N.D.Ill.1984). Conversely, the Commissioner's interpretation of the amendment's purpose is consistent with the available legislative history and constitutes a legitimate government interest. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (according considerable weight "to an executive department's construction of a statutory scheme it is entrusted to administer"). Consequently, given the presumption of constitutionality, we defer to the purpose of the law referred to in the House Report and conclude that the amendment has a legitimate governmental interest.

### B. RATIONAL RELATIONSHIP

The Supreme Court has held that the rational basis test is satisfied so long as the statute does not manifest "a patently arbitrary classification, utterly lacking in rational justification." *Salfi*, 422 U.S. at 768, 95 S.Ct. at 2468. Further, the judiciary is not in a position to second-guess Congress or the states in public welfare legislation. *Id.* This discretion is not without boundaries, however, as the Constitution prohibits Congress from invidiously discriminating among claimants for the sole desire to harm a politically unpopular group. *See United States Dept. of Agriculture v. Murry*, 413 U.S. 508, 518–19, 93 S.Ct. 2832, 2837–38, 37 L.Ed.2d 767 (Marshall concurring).

Stengel argues that § 423(d)(2)(C) violates the Constitution because it is not rationally related to any governmental interest. Stengel contends that the plain language of the amendment supports his conclusion. In examining the plain language of the Act, we turn to those provisions applicable to disability determinations. Section 423(d)(2)(B) provides that:

> [i]n determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

42 U.S.C. § 423(d)(2)(B) (1996). However, § 423(d)(2)(C) of the Act, the amendment in question, provides that:

> [a]n individual shall not be considered disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

42 U.S.C. § 423(d)(2)(C) (1996).

In challenging the amendment both facially and as it applies to him, Stengel argues that the language precludes the Commissioner from determining whether alcoholics, he in particular, are otherwise disabled under the Act. Stengel claims that this language dictates a mandatory three-step process to determine whether a person is disabled. According to Stengel, the Commissioner must first determine whether the claimant's combined impairments render him disabled under subsection (B). Next, the Commissioner looks to see whether any one of the factors materially contributing to that determination is alcoholism or drug addition under subsection (C). Finally, if alcoholism or drug addition is a material contributing factor, the Commissioner must deny disability benefits. Under this analysis, Stengel argues that the Commissioner has no discretion to consider whether a subset of factors (i.e., all impairments except alcoholism or drug addiction) adds up to a disabling condition. As an example, Stengel argues that under the statutory scheme, a paraplegic suffering from alcoholism could never qualify for benefits because if the alcoholism is material, the paraplegic cannot be considered disabled under subsection (C).

We acknowledge that Stengel's interpretation of the disability determination process is a possible reading of the statute. *But see Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress"). However, Stengel's interpretation is premised upon the assumption that the Commissioner must make a disability determination by looking to the statutory provisions *in the order in which the provisions are written.* That is, Stengel assumes that the Commissioner can never look to subsection (C) first to decide whether a person has alcohol or drug addiction as a disability, and then determine under subsection (B) whether the combined effect of all other impairments satisfy the disability standard. Nothing in the statutory language suggests that the disability determination must be made in the order written in the statute. Furthermore, Stengel's interpretation of the statute is entirely inconsistent with the amendment's legislative history, and the Commissioner's application of the amendment.

The legislative history indicates that Congress did not intend to terminate benefits to those who have qualifying disabilities in addition to a substance abuse problem. For instance, the House Committee Report notes that "[i]ndividuals with drug addiction and/or alcoholism who have another severe disabling condition (such as AIDS, cancer, cirrhosis) can qualify for benefits [under the new law] based on that disabling condition." H.R. Rep. 104–379, at 19 (1996). The House Report also envisions a scheme for paying benefits to a representative payee instead of the claimant when the claimant is receiving benefits based on another disability and is also a drug addict or alcoholic. *Id.* In addition, the House Report states that the Congressional Budget Office "assumes that only about one-quarter of [alcoholics and drug addicts receiving benefits for that condition] would be permanently terminated from the program; the rest could requalify by documenting that they have another sufficiently disabling condition." *Id.* at 27. This indicates Congress' intention to award benefits to substance abusers who otherwise qualify for benefits.

Furthermore, Stengel's own complaint belies his assertion that the amendment prohibits the Commissioner from considering other ailments in rendering a disability determination. Stengel attaches a letter from the Commissioner to his complaint, which notifies Stengel that his benefits would be terminated.[6] Pl.'s Ex. A. The letter states that Stengel's benefits were being terminated because Stengel would not have been considered disabled had the Commissioner not considered his alcohol addiction. The letter further provides that Stengel should notify the Commissioner if Stengel believed he was disabled in light of other impairing conditions. Contrary to Stengel's assertions, this letter demonstrates that, in applying the amendment to Stengel, the Commissioner could consider Stengel's other conditions in rendering a disability determination. Accordingly, we reject Stengel's contention that the amendment as written bars the Commissioner from considering Stengel's and other substance abusers other disabilities in awarding benefits under the Act.

Next, Stengel argues that, as applied to him, "the scheme of classifying disabilities on the basis of disease type ... is not rationally related to a legitimate government interest." Pl.'s Am. Compl. ¶ 20. Stengel claims that the amendment is overly broad because it denies benefits to alcoholics who are not currently abusing drugs or alcohol. Stengel argues that because alcoholism is an incurable disease, many people who are not presently drinking may still be considered alcoholics. Under the amendment, however, these persons will no longer receive benefits. Stengel contends that if we accept the Commissioner's argument that the purpose of the amendment is to prevent substance abusers

---

6. We may consider this document attached to the amended complaint as part of the pleadings for purposes of defendant's 12(b)(6) motion to dismiss. *See Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir.1994).

from continuing their addictions to qualify for benefits, then we must also acknowledge that the amendment improperly affects both recovering alcoholics and current abusers alike. Because Congress intended only to provide a disincentive to current abusers, Stengel argues that the law is unconstitutionally over-inclusive and not rationally related to any legitimate governmental objective.

Initially, we note that Stengel's characterization of the amendment's purpose is overly simplistic. Regardless, all claims of over-inclusiveness encounter significant obstacles in the social security legislation arena. *See Salfi*, 422 U.S. at 772, 95 S.Ct. at 2470. There is no bright-line test employed to determine whether a piece of social security legislation is so over-inclusive as to be ruled unconstitutional. However, unartfully drawn legislation that affects persons in a manner that fails to advance the legislative purpose will not typically render the legislation unconstitutional. *See, e.g., Salfi*, 422 U.S. at 772, 95 S.Ct. at 2470; *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 167, 101 S.Ct. 453, 455–56, 66 L.Ed.2d 368 (1980). Both the Supreme Court and the Seventh Circuit have recognized that Congress must sometimes make rough accommodations that cause illogical or unscientific results, particularly in the area of social security legislation. *See Lindley v. Sullivan*, 889 F.2d 124, 132 (7th Cir.1989) (citing *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970)).

For instance, in *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), the Court recognized the legitimate governmental interest of insuring a physically sound police force in upholding a mandatory retirement age of 50 for police officers. *Id.* at 314, 96 S.Ct. at 2566–67. In support of their equal protection challenge, the plaintiffs argued that many officers over fifty had demonstrated that they were physically fit under police force standards, and therefore the test was

not rationally related to the espoused governmental interest. However, the Court held that Congress' classifications need not be drawn with perfection:

> That the State chooses not to determine fitness more precisely through individualized testing after age 50 is not to say that the objective of assuring physical fitness is not rationally furthered by a maximum-age limitation. It is only to say that with regard to the interest of all concerned, the State perhaps has not chose the best means to accomplish this purpose. But where rationality is the test, a State 'does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.' [citations omitted]

*Id.* at 316, 96 S.Ct. at 2568.

Similarly, in *Salfi*, 422 U.S. at 784–85, 95 S.Ct. at 2476–77, the Court upheld a provision of the Social Security Act that denied survivors' benefits to a widow married only nine months to a decedent under the Act's duration-of-relationship requirement. The Court noted that because the statute excluded many legitimate claimants for survivors' benefits, it was not rationally related to its designed purpose in *every* application. *Id.* at 781, 95 S.Ct. at 2474–75. Nonetheless, the Court upheld the statute against the equal protection challenge because Congress could rationally choose such a course. *Id.* The Court viewed the essential question as

> whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded that both a particular limitation or qualification would protect against its occurrence, and the expense and other difficulties of individual determinations justified in the inherent imperfections of a prophylactic rule.

*Id.* at 777, 95 S.Ct. at 2472–73. The Court then concluded that this was part of the cost of administering a large social insurance program.[7] *Id.; see also Lindley*, 889 F.2d at 133 (discounting the over-inclusiveness of the statute); *Pulley v. Bowen*, 817 F.2d 453, 454

---

7. Other instances of discounting over-inclusiveness include a situation where a monthly accounting program that incidentally harmed terminally ill recipients because they would not have recoupment opportunities under the statute was still considered rationally related to the legitimate objective of reducing overpayments in the social security system. *Zaharakis v. Heckler*, 744 F.2d 711 (9th Cir.1984). A statute requiring that social security benefits were to offset unemployment benefits was found not to violate equal protection rights, despite the fact it harmed pri-

(7th Cir.1987) (upholding a social security statute in spite of over-inclusiveness arguments, and stating that "to the extent a statute might yield unfair results, it is a cost that Congress was willing to accept as part of a large social insurance program. It is a policy decision that the courts must enforce.")

Consequently, given the wide latitude afforded Congress in enacting such legislation and the strong presumption of constitutionality, we construe § 423(d)(2)(C) as not being over-inclusive and thus rationally related to deterring alcoholism and drug addiction. The amendment will eliminate an incentive to maintain a pattern of substance abuse. We recognize, however, that the law will also eliminate benefits to persons who are not abusing substances, but whose alcoholism interferes with their ability to work. Despite this, it is not the province of this Court to determine whether this amendment is the most efficient means of achieving its stated objective. Rather, we hold only that the amendment is not so "wholly unrelated to the objective of the statute" as to deny Stengel due process and equal protection under the laws. *Murgia,* 427 U.S. at 315, 317, 96 S.Ct. at 2567–68, 2568–69. For these reasons, the Commissioner's motion to dismiss Stengel's due process and equal protection challenges to the amendment, as set forth in Counts I, II, III, and IV of Stengel's amended complaint, is granted.

## C. VIOLATION OF STATUTORY DUTIES

In Count V, Stengel alleges that the Commissioner has violated his statutory duties by denying benefits to Stengel to which he is entitled. The Commissioner's failure to pay benefits is solely based on the allegedly unconstitutional mandate of § 423(d)(2)(C). Having determined that the amendment in question passes constitutional muster, however, we find that Stengel's claim lacks merit. We note that Stengel has not alleged that the Commissioner applied the law incorrectly or that he ignored the letter of the law; Stengel merely asserts that the Commissioner denied him benefits under the authority of the stat-

ute in question. In the absence of such allegations, we grant the Commissioner's motion to dismiss Count V of Stengel's amended complaint.

## CONCLUSION

We find that Mr. Stengel has satisfied his burden of establishing subject matter jurisdiction. However, we grant the Commissioner's motion to dismiss Stengel's constitutional challenges for failure to state a claim upon which relief can be granted. While it is unfortunate that the amendment may operate to deny benefits even to recovering alcoholics, we cannot say that the statute is so unrelated to the legitimate government interest of deterring substance abuse as to offend the Constitution. In reaching this conclusion, the Court remains mindful of its limited role in reviewing an act of Congress. Lastly, we find that the Commissioner's termination of Stengel's benefits was fully authorized by statute. Therefore, the Commissioner's motion to dismiss is granted. We expressly note, however, that our ruling in no way affects Stengel's administrative petition seeking a disability determination based upon factors other than his alcoholism.

vate pension recipients by not including them in the offset provision. *Edwards v. Valdez,* 789 F.2d 1477 (10th Cir.1986).