Terry M. MITCHELL, Plaintiff,

v.

Kenneth S. APFEL,[1] Commissioner
of Social Security, Defendant.

No. 3:97CV330–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Aug. 6, 1998.

---

1. Effective September 29, 1997, Kenneth S. Apfel was sworn in as Commissioner of Social Security, succeeding acting Commissioner John J. Callahan in that position. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure and § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), Mr. Apfel has been substituted for Mr. Callahan as the Defendant in this action.

Henry B. Wansker, Rockingham, NC, for Plaintiff.

Joseph Brinkley, Charlotte, NC, for Defendant.

## ORDER

ROBERT D. POTTER, Senior District Judge.

**THIS MATTER** is before the Court on a Memorandum and Recommendation ("M & R") of Chief United States Magistrate Judge Carl Horn, entered on 18 June 1998. Plaintiff filed an objection and the Government responded.

The Court must conduct a *de novo* review of those portions of the report or proposed findings and recommendations to which objection is made. 28 U.S.C.A. § 636(b)(1) (West 1993). The Court has reviewed the pertinent legal authorities and the objections made. After conducting this review, the Court finds that the record supports the Magistrate's findings of fact and conclusions of law.

**NOW, THEREFORE, IT IS ORDERED** that the M & R be, and hereby is, **AF-FIRMED and ADOPTED in its ENTIRE-TY.**

The Court will file a corresponding judgment dismissing this matter with prejudice.

HORN, Chief United States Magistrate Judge.

**THIS MATTER** is before the Court on the Plaintiff's "Motion For Summary Judgment" (document # 13) and "Brief in Support..." (document # 14), both filed March 26, 1998, and Defendant's "Motion For Summary Judgment"(document # 17) and "Memoran-

dum in Support of the Commissioner's Decision" (document # 18), both filed June 15, 1998. This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and is now ripe for the Court's consideration.

Having considered the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's Motion for Summary Judgment be *denied*; that Defendant's Motion for Summary Judgment be *granted*; and that the Commissioner's decision be *affirmed.*

## I. *PROCEDURAL HISTORY*

On March 2, 1995, the Plaintiff filed applications for 1) a period of disability and disability insurance (DI) benefits and 2) supplemental security income (SSI), respectively, alleging disability since January 14, 1994 based primarily on alcoholism. (Tr. 64–67;79–81.)[2] These applications were denied initially and on reconsideration, (Tr. 68–73; 76–78; 82–85), and Plaintiff subsequently requested a hearing. On May 16, 1996, a hearing was held before an Administrative Law Judge (the "ALJ"), who denied each of Plaintiff's applications in a decision dated May 31, 1996. (Tr. 11–16.) The Appeals Council thereafter denied the Plaintiff's request for review and affirmed the ALJ's decision, making this the final decision of the Commissioner. (Tr. 3–4; 5–7.) *See* 20 C.F.R. § 404.955 and 404.981 (1997). Thus, the Plaintiff exhausted his administrative remedies prior to filing this action on June 5, 1997, and the parties' cross-motions for summary judgment are now ripe for review.

## II. *FACTUAL BACKGROUND*

The material facts in this action are not in dispute, as Plaintiff has conceded that the "findings of fact of the Commissioner of Social Security are supported by substantial evidence and are conclusive." The sole issue before the Court is a question of law, the

---

**2.** Plaintiff initially claimed disability also on the basis of depression, stomach acid, and poor circulation in his lower extremities; however,

Plaintiff does not challenge the ALJ's finding that none of these other impairments was "severe" under the applicable regulations. (Tr. 14.)

resolution of which warrants only a brief recitation of the underlying facts.

As found by the ALJ, the Plaintiff, a "younger individual" with a high school education, has not engaged in substantial gainful activity since January 14, 1994, his alleged date of onset of disability. Plaintiff claims disability from that date based solely on his "long history of chronic alcohol abuse, hospitalizations, detoxification, and relapse;" the fact that he is a "severe alcoholic who drinks alcohol constantly;" and that his condition is a both "medically determinable" and "severe" impairment which "affects his ability to be gainfully employed" under the applicable regulations. (Tr. 13–15.) The ALJ specifically noted that "but for the application of Section 105 of Public Law 104–121," Plaintiff's condition "would be 'disabling' under the Social Security Act." (Tr. 14–15.)

On March 29, 1996, prior to the final adjudication of Plaintiff's claim by the Commissioner, Congress passed the "Contract With America Advancement Act of 1996," Pub.L. No.104–121. The pertinent portion of that Act, § 105, amends the Social Security Act by adding the following language to the definition of "disability":

> (C) An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

42 U.S.C.A. § 423(d)(2)(C) (1997). Plaintiff in this action challenges the constitutionality of this statutory amendment and its attendant regulations, which provide the sole basis for the Commissioner's finding that Plaintiff was "not disabled" for Social Security purposes.

### III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports. the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir.1992) (*per curiam* ). The district court does not ordinarily review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir.1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972).

The Plaintiff in this action, however, has conceded that substantial evidence supports the Commissioner's decision, and instead he presents a straightforward question of law, namely: whether 42 U.S.C. § 423(d)(2)(C), as amended, violates the Equal Protection or Due Process provisions of the United States Constitution. These legal issues are subject to *de novo* review by this Court.

Nonetheless, the Court's standard of review regarding the constitutionality of Congress' allocation of Social Security benefits has been described as "deferential" in light of the inherent difficulty in making "many distinctions among classes of beneficiaries while making allocations from a finite fund." *Bowen v. Owens*, 476 U.S. 340, 345, 106 S.Ct. 1881, 90 L.Ed.2d 316 (1986). The discretion to make such allocations of benefits " 'belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, [and] not an exercise of judgment.' " *Id., citing Mathews v. De Castro*, 429 U.S. 181, 185, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976), *and Helvering v. Davis*, 301 U.S. 619, 640, 57 S.Ct. 904, 81 L.Ed. 1307 (1937). As the Court held in *Flemming v. Nestor*, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960):

> Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as [Social Security], we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.

Thus, the Court has granted a "strong presumption of constitutionality" to "legislation conferring monetary benefits." *Schweiker v. Wilson*, 450 U.S. 221, 238, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981), *citing Mathews*, 429 U.S. at 185, 97 S.Ct. 431.

Plaintiff contends that the statute in question should be subjected to some higher form of scrutiny, and towards that end argues that it deprives him of a fundamental right (his entitlement to benefits) or makes distinctions based on a "quasi-suspect classification" (whether the applicant is an alcoholic or drug abuser). However, each of the Plaintiff's contentions in this regard is foreclosed by clear precedent and common sense.

In *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Court considered a claimant's equal protection challenge to a provision of the Social Security Act providing that widows and stepchildren would not be eligible for survivors' benefits if the widow had been married to the decedent less than nine months prior to his death. In applying the rational basis test to this classification, the Court stated specifically that "a noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status... though of course Congress may not invidiously discriminate among such claimants on the basis of a 'bare congressional desire to harm a politically unpopular group'..., or on the basis of criteria which bear no rational relation to a legitimate legislative goal." 422 U.S. at 772, 95 S.Ct. 2457. *See also United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 174, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980) (stating that "social security benefits... are not contractual and may be altered or even eliminated at any time" and applying rational basis test to classification of railroad retirement benefits recipients based on length of service) *Cf. Lavine v. Milne,* 424 U.S. 577, 585 n. 9, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976) (holding that "[w]elfare benefits are not a fundamental right").

Neither are alcoholics or substance abusers properly considered a "suspect" or "quasi-suspect" class for equal protection purposes. The only criteria considered "suspect" and thus subject to strict scrutiny[3] are race, alienage, and national origin. *Korematsu v. United States,* 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1944)(race/national origin); *Graham v. Richardson,* 403 U.S. 365, 376, 91 S.Ct. 1848, 29 L.Ed.2d 534, (1971) (alienage). Gender and illegitimacy have been deemed "quasi-suspect" classifications, and statutes which classify or discriminate on the basis thereof are subjected to "intermediate scrutiny," meaning that they must substantially further an important government interest. *See, e.g., Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988) (illegitimacy); *Mississippi University for Women v. Hogan,* 458 U.S. 718, 723–724, and n. 9, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) (gender); *Mills v. Habluetzel,* 456 U.S. 91, 101, and n. 8, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982) (illegitimacy); *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (gender).

Furthermore, the Supreme Court has expressly rejected age and mental retardation as quasi-suspect classes. *See, e.g., Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (age); *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 442, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)(mental retardation). As the court stated in *City of Cleburne:*

> where individuals in the group affected by a law have distinguishing characteristics relevant to interests the State has the authority to implement, the courts have been very reluctant, as they should be in our federal system and with our respect for the separation of powers, to closely scrutinize legislative choices as to whether, how, and to what extent those interests should be pursued. In such cases, the Equal Protection Clause requires only a rational means to serve a legitimate end.

473 U.S. at 441–42, 105 S.Ct. 3249. Numerous cases in the lower courts have thus held that statutes affecting handicapped or disabled persons do not received heightened judicial scrutiny under equal protection analysis. *See, e.g., Pontarelli Limousine, Inc. v. Chicago,* 929 F.2d 339, 341 (7th Cir.1991); *DeVargas v. Mason & Hanger–Silas Mason Co.,* 844 F.2d 714, 725 (10th Cir.1988); *California Ass'n of Physically Handicapped, Inc. v. FCC,* 721 F.2d 667, 670 (9th Cir .1983),

---

3. Strict scrutiny requires that legislation be narrowly tailored to address a compelling state interest. *McLaughlin v. Florida,* 379 U.S. 184, 192, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964).

*cert. denied,* 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984); *Brown v. Sibley,* 650 F.2d 760, 766 (5th Cir.1981).).

If disabled persons as a class are not considered suspect or quasi-suspect, it is difficult to see how a particular subset thereof—persons with a disabling addiction to drugs or alcohol—should somehow be afforded greater constitutional protection. Indeed, if classifications based on age and disability generally—characteristics over which an individual may have no control—do not demand heightened judicial circumspection, it follows that classifications based on addiction to drugs or alcohol should be even less subject to judicial second-guessing. *See also Gazette v. City of Pontiac,* 41 F.3d 1061, 1067 (6th Cir.1994) ("[t]he status of being an alcoholic, or a recovering alcoholic, is not a suspect class for equal protection analysis, and so the lowest level of scrutiny applies to the defendants' action").

■ Thus, contrary to Plaintiff's assertions, his constitutional challenge to § 423(d)(2)(C) is governed by the "rational basis" test. *See Stengel v. Callahan,* 983 F.Supp. 1154 (N.D.Ill.1997) (finding substance abusers not to be a suspect or quasi-suspect class and applying rational basis test to § 105). Under this test, "a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer v. Evans,* 517 U.S. 620, 632, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). As the Supreme Court recognized in *Romer,* "most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." 517 U.S. at 631, 116 S.Ct. 1620, *citing Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 271–72, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) *and F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920).

■ The Equal Protection Clause "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices," and those challenging the rationality of a legislative classification have the burden to negate "every conceivable basis" which might support it. *Id., citing Federal Communications Comm'n v. Beach Communications, Inc.,* 508 U.S. 307, 313–16, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). Moreover, the absence of legislative facts explaining a classification has no significance in the rational basis analysis, since the classification "may be based on rational speculation unsupported by evidence or empirical data." *Beach Communications,* 508 U.S. at 314–16, 113 S.Ct. 2096.

Finally, it is well settled that "if a federal statute is valid under the equal protection component of the Fifth Amendment, it is perforce valid under the Due Process Clause of that Amendment." *United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 174 n. 8, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980); *see also Salfi,* 422 U.S. at 770, 95 S.Ct. 2457; *Vance v. Bradley,* 440 U.S. 93, 95 n. 1, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)("the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws"). Thus, the rational basis test governs Plaintiff's constitutional claims, whether couched in terms of equal protection or due process.

## IV. *DISCUSSION OF CLAIM*

The record indicates that the Plaintiff has acquired sufficient quarters of coverage that he would remain insured through September, 1998 for the purpose of determining his eligibility for DI benefits. Plaintiff's eligibility for SSI benefits is not, however, contingent on his date last insured, though he may not receive benefits for any time prior to the filing of his application for same. 20 C.F.R. § 416.335 (1977). Therefore, the salient question is whether at any time the Plaintiff became "disabled" as that term of art is defined for Social Security purposes. The ALJ found that but for the application of § 105 of Public Law 104–121, Plaintiff's alcoholism would render him "disabled" under the Social Security Act, and the parties do not contest this finding.

■ As previously noted, Section 105 of the Contract With America Advancement Act of 1996, provides as follows:

An individual shall not be considered to be disabled for purposes of this subchapter if

alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

42 U.S.C. § 423(d)(2)(C). As discussed above, the only question before the Court is whether this provision, and its attendant regulations for implementation,[4] are rationally related to a legitimate government interest.

The statute on its face does not expressly set forth the objective of this provision. However, the Government has cited two legitimate goals of the statute which are readily discernable from its language and operation: reducing substance abuse and conserving scarce budgetary resources. *See also Stengel,* 983 F.Supp. at 1163 ("Congress enacted this provision with companion statutes that indicate a dual purpose of conserving limited resources while promoting rehabilitative behavior among substance abusers"). Moreover, these two goals are evident from a review of the only legislative history drawn to the undersigned's attention by the parties. The House Report on § 105 of the Act specifically states that this law was enacted to:

> eliminate payment of cash Social Security and SSI disability benefits to drug addicts and alcoholics, to ensure that beneficiaries with other severe disabilities who are also drug addicts or alcoholics are paid benefits through a representative payee and referred for treatment, and to provide additional funding to States to enable recipients to continue to be referred to treatment sources.

H.R. Rep. 104–379, 104th Cong., 1995 W.L. 717402 (Leg.Hist.) at *20 (1995). The Report indicates Congress' desire to change the law in order to remove "a perverse incentive that affronts working taxpayers and fails to serve the interests of addicts and alcoholics,

many of whom use their disability checks to purchase drugs and alcohol, thereby maintaining their addictions." *Id.*

Deterrence of substance abuse is a patently legitimate governmental interest—indeed, one that the federal and state governments enact all sorts of laws to further. It is incongruous to suggest that the government can criminalize drug possession and trafficking, or driving under the influence of alcohol, but is somehow not permitted to offer or withhold noncontractual benefits in a manner designed to discourage abuse of drugs or alcohol.

Indeed, the Supreme Court itself has recognized that deterrence of drug abuse is a legitimate—even compelling—government interest. In *Employment Division, Department of Human Resources of Oregon, et al., v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the Supreme Court considered whether the State of Oregon could deny unemployment compensation benefits to former employees discharged for use of peyote, a schedule I controlled substance. The former employees claimed that because they used peyote for religious reasons, the law forbidding its use could not be enforced against them without offending the "free exercise" clause of the First Amendment. 494 U.S. at 876–77, 110 S.Ct. 1595. Although the majority decided in favor of the State on other grounds, Justice Sandra Day O'Connor in concurrence applied a form of strict scrutiny, and determined that the laws in question served a "compelling government interest." *Id.* at 894–907, 110 S.Ct. 1595. In particular, she stated

> [t]here is ... no dispute that Oregon has a significant interest in enforcing laws that control the possession and use of controlled substances by its citizens ... As we recently noted, drug abuse is "one of the

---

4. The regulations promulgated by the Commissioner for implementation of this amended definition of disability provide that "If [the Commissioner] find[s] you are disabled and ha[s] medical evidence of your drug addiction or alcoholism, [the Commissioner] must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). To make this determination, the Commissioner must decide whether the claimant would still be found disabled if the claimant stopped using drugs. *See* 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). If so, then the drug addiction is not a contributing factor material to the finding of disability. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). If, however, the claimant's remaining impairments would not be disabling without the drug addiction, then the drug addiction is a contributing factor material to the finding of disability. 20 C.F.R. §§ 404.1535(b)(2)(I), 416.935(b)(2)(I).

greatest problems affecting the health and welfare of our population" and thus "one of the most serious problems confronting our society today." *National Treasury Employees v. Von Raab,* 489 U.S. 656, 668, 674, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). 494 U.S. at 904, 110 S.Ct. 1595 (O'Connor, J., concurring) (citations omitted). *See also Wisconsin v. Yoder,* 406 U.S. 205, 220, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) ("[A]ctivities of individuals, even when religiously based, are often subject to regulation by the States in the exercise of their *undoubted power to promote the health, safety, and general welfare* ")(emphasis added).

Thus, the legitimacy of the government's interest in deterring substance abuse—whether by means of the criminal law or of the allocation of welfare or social security benefits—cannot seriously be questioned. That Congress was concerned with reducing substance abuse, and particularly with the welfare of alcohol and drug addicts—and not merely punishing them for their behavior—is evidenced by the other legislation passed simultaneously with the discontinuance of benefits for persons whose disability results from substance abuse or addiction. Specifically, portions of Pub.L. No. 104–121, § 105 provided for the rerouting of federal funds from awards of disability benefits to funding for state sponsored drug and alcohol treatment. Moreover, individuals found to be disabled for reasons other than their substance abuse/addiction not only continue to receive benefits, but are referred to state level substance abuse treatment programs. § 105(a)(3) & (b)(3), codified at 42 U.S.C. § 1383e and 42 U.S.C. § 422.

Plaintiff contends that the "real purpose" of the amendment to the Social Security Act is "merely" to save money. But the conservation of budgetary resources is a no less legitimate governmental interest also served by this legislation. *See, e.g., Schweiker v.*

*Wilson,* 450 U.S. 221, 238, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981) ("Congress should have discretion in deciding how to expend necessarily limited resources"); *Davis v. Bowen,* 825 F.2d 799, 801 (4th Cir.1987) (suspension of Social Security benefits for convicted felons held rationally related to the legitimate interest of "conserving scarce social security resources"); *Zipkin v. Heckler,* 790 F.2d 16, 18 (2nd Cir.1986) (same). In light of the significant drain on resources directly attributable to substance abuse in this country,[5] it is clear that Congress has in fact chosen a worthy target for budgetary conservation.

Congress made the legislative determination that the payment of disability benefits to alcoholics and drug addicts in fact facilitated their continued drug and/or alcohol addictions, and in essence served to subsidize the very behavior that kept them from working. Thus, Congress acted to cut off this source of revenue—both to assist the individual claimant to take steps to get treatment and to prevent drain on the public coffers that directly results from his or her continuing failure to get treatment. The legitimacy of these interests is simply beyond question. *See Stengel,* 983 F.Supp. at 1163–64.

Likewise, the amendments enacted by Congress are rationally related to these interests. First, the particular means by which to curb substance abuse or conserve finite resources are matters well within the discretion of the legislature; indeed, such decisions are better made by the legislature than the judiciary. *See Salfi,* 422 U.S. at 770, 95 S.Ct. 2457 ("the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy.") (citations omitted). So long as there is a rational basis for the government's allocation of benefits, a classification which is somehow flawed or imperfect does not violate the Constitution. *City of Dallas v. Stanglin,* 490 U.S. 19, 26, 109 S.Ct. 1591, 104 L.Ed.2d 18

---

5. The National Institute on Drug Abuse and the National Institute on Alcohol Abuse and Alcoholism recently released the results from a government study which indicated that in 1992 alone, alcohol and drug abuse and dependence cost the United States over $246 billion (in the form of lost productivity due to illness or early death, health care costs, property damage and crime). "Alcohol, Drug Abuse Cost U.S. $246 Billion," Reuters, May 13, 1998. The study also concluded that 39% of the cost of alcohol abuse and 46% of the cost of drug abuse was borne by the Government. *Id.*

(1989). *Accord Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) ("In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' "), *citing Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369 (1911).

Second, in any event, the subject measure adopted by Congress in this particular instance is eminently rational. Rather than withdrawing benefits from *all* disabled persons with substance abuse problems or addictions, Congress only provided that those whose alcoholism was "a *contributing factor material to*" their disability determination would no longer qualify as disabled. 42 U.S.C. § 423(d)(2)(C)(emphasis added). *See also* H.R. Rep. 104–379, at *19 ("[i]ndividuals with drug addiction and/or alcoholism who have another severe disabling condition (such as AIDS, cancer, cirrhosis) can qualify for benefits [under the new law] based on that disabling condition."). This wording ensures that those who have disabilities *wholly* out of their control (such as visual impairments, debilitating arthritis, etc.) continue to get benefits;[6] meanwhile those whose disability is caused primarily by drug or alcohol dependence—arguably treatable conditions[7]—will no longer be given money for doing nothing (which, Congress has determined, often leaves such persons with more available time and funds to feed their habits, and also decreases their incentive to get treatment).

Plaintiff contends that there is no rational basis for treating persons with drug or alcohol addictions differently from those with other disabilities. However, regardless of whether—as Plaintiff contends—there is a

genetically-caused component to alcohol or drug addiction, the fact remains that there is an undeniable volitional component as well. In addition to recovering alcoholics and addicts (who recognize their propensity for abuse and thus take steps to avoid these substances), there exist numerous persons who, while perhaps genetically predisposed to addiction, never suffer from it because they do not experiment with potentially addicting substances. Congress is well within its discretion to determine that no other severe, potentially disabling impairment has such a volitional component, which in some part makes the person responsible for the onset of the disease and, more importantly, for its perseverance. *See Traynor v. Turnage*, 485 U.S. 535, 552, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988) ("This litigation [upholding denial of certain Veterans' benefits on finding that primary alcoholism constituted "willful misconduct"] does not require the Court to decide whether alcoholism is a disease whose course its victims cannot control. It is not our role to resolve this medical issue on which the authorities remain sharply divided.") Indeed, if there is a rational perception that substance abuse is at least in part a matter of the will as well as physical factors, Congress is permitted to respond with appropriate legislation to address that concern. *See Beach Communications, supra,* 508 U.S. at 314–16, 113 S.Ct. 2096. *Cf. Colorado Manufactured Housing Association v. City of Salida,* 977 F.Supp. 1080, 1085–86 (D.Colo. 1997) (finding that local government's mobile home zoning regulation in response to public perception of decrease in value associated with mobile home proliferation is a legitimate government interest).

Plaintiff thus has not met his burden to negate "every conceivable basis" for the challenged amendment to the Social Security Act. On the contrary, Congress' action is

---

**6.** To be sure, some of those persons with other disabilities unrelated to drug or alcohol abuse might use their benefits to further their addictions as well; however, the legislature's stated purposes to decrease the amount of disability benefits flowing to further addictive behaviors and to conserve budgetary resources are not required to be achieved with perfect precision. *See Dandridge, supra,* 397 U.S. at 485, 90 S.Ct. 1153.

**7.** Plaintiff's brief itself refers to "recovering alcoholics," persons who, through the help of support groups like Alcoholics Anonymous and/or churches, are able to avoid further substance abuse, hold gainful employment, and live productive lives despite the admittedly powerful nature of their addiction, whatever its root causes.

rationally related to patently legitimate government interests, and thus does not run afoul of the Equal Protection clause of the United States Constitution. As that is the sole grounds for Plaintiff's appeal to this Court, the decision of the Commissioner should be affirmed.

## V. *RECOMMENDATION*

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" filed March 26, 1998 (document # 13) be **DENIED**; that Defendant's "Motion for Summary Judgment" filed June 15, 1998 (document # 17) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## VI. *NOTICE OF APPEAL RIGHTS*

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. *Snyder v. Ridenour*, 889 F.2d 1363, 1365 (4th Cir.1989); *United States v. Rice*, 741 F.Supp. 101, 102 (W.D.N.C.1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to *de novo* review by the district court, *Ridenour*, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins*, 766 F.2d 841, 845–46 (4th Cir.1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; *and to the Honorable Robert D. Potter*.