Douglas G. **BELCHER**, Plaintiff,

v.

Kenneth S. **APFEL**, Commissioner of Social Security, Defendant.

Civil Action No. 1:98–0114.

United States District Court,
S.D. West Virginia.

April 28, 1999.

Derrick Lefler, Princeton, WV, for plaintiff.

Stephen Horn, Charleston, WV, for defendant.

## MEMORANDUM OPINION

FEINBERG, United States Magistrate Judge.

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401–433. This case is presently pending before the court on Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings. Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Douglas Belcher (hereinafter referred to as "Claimant"), filed an application for DIB on January 21, 1994, alleging disability as of September 15, 1987, due to nerves, and eyesight and hearing problems. (Tr. at 28, 76.) The claim was denied initially and upon reconsideration. (Tr. at 35, 62.) On March 6, 1995, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 67.) The hearing was held on May 7, 1996 before the Honorable Thomas R. King, Jr. (Tr. at 246.) By decision dated October 21, 1996, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 20.) The ALJ's decision became the final decision of the Commissioner on January 4, 1998, when the Appeals Council denied Claimant's request for review. (Tr. at 4.) On February 10, 1998, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (1998). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* at § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* at § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* at § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* at § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* at § 404.1520(e). By satisfying inquiry four, the claimant

establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir.1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir.1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (1998). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir.1976).

In this particular case, the ALJ determined that a denial of benefits could not be based on the first inquiry in the sequential analysis. (Tr. at 16.) Under the second inquiry, the ALJ found that Claimant suffered only from the severe impairment of alcoholism prior to the expiration of his disability insured status on March 31, 1991. (*Id.*) At the third inquiry, the ALJ concluded that Claimant's impairment does not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17.) In reaching this conclusion, the ALJ observed that § 12.09 of the listings exists now as a reference only because substance addiction disorders are no longer recognized as a basis for disability. The ALJ found that Claimant's alcoholism did not result in any other listed impairment. Because the only impairment which Claimant had, apart from alcoholism, was non-severe hypertension, the ALJ concluded that Claimant had a residual functional capacity for the full range of work prior to the expiration of his disability insured status. (Tr. at 18.) In the absence of a severe impairment other than alcoholism, the ALJ found that Claimant was not disabled prior to the expiration of his disability insured status. (Tr. at 19.) On this basis, benefits were denied. (*Id.*)

*Scope of Review*

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir.1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir.1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

*Claimant's Background*

Claimant was born on February 11, 1945 and was fifty-one years old at the time of the administrative hearing. (Tr. at 250.) He completed the seventh grade in school. (Tr. at 251.)

By all accounts, Claimant was an alcoholic on March 31, 1991, the day his disability insured status expired. (Tr. at 16.) Subsequently, on April 19, 1994, Claimant suffered a heart attack. (Tr. at 176–77.) Dr. Phillip Peterson recommended a coronary bypass. (*Id.*) Claimant finally had the surgery on March 8, 1995. (Tr. at 202.)

The ALJ conceded at the administrative hearing that Claimant is currently disabled

by heart problems. (Tr. at 249.) Nevertheless, the ALJ denied benefits because this impairment did not become disabling until after the expiration of Claimant's disability insured status. (Tr. at 16, 149.) Claimant does not challenge this finding but rather asserts that the ALJ should not have applied the March 29, 1996 amendment to the Social Security Act to this case.

*Amendment of the Social Security Act*

In 1996, Congress amended the Social Security Act to preclude individuals suffering from alcoholism from receiving benefits. Specifically, "[a]n individual shall not be considered to be disabled ... in alcoholism ... would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The corresponding regulations state that alcoholism is a contributing factor if the claimant would not be disabled if he stopped using alcohol. 20 C.F.R. § 404.1535(b) (1998). The amendment ("Amendment") applies to all cases which were not "finally adjudicated by the Commissioner" prior to March 29, 1996. Pub.L. 104–121, § 105(a)(5)(A), 110 Stat. 847, 853 (1996). Claimants whose cases were finally adjudicated prior to March 29, 1996 continued receiving benefits until January 1, 1997. *Id.*

The Amendment and the social security regulations set up a two-step analysis. First, the ALJ must determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1535(a) (1998). If the ALJ does conclude that the claimant is disabled, he must then ask whether alcoholism is a contributing factor to claimant's disability. *See id.* Alcoholism is a contributing factor

if the claimant would not be disabled if he stopped drinking. *See* 20 C.F.R. § 404.1535(b)(1) (1998).

*Claimant's Challenge to the Commissioner's Decision*

Claimant asserts that the decision of the Commissioner is not supported by substantial evidence because the ALJ incorrectly applied the statutory exclusion of alcoholism to a disability which existed prior to the effective date of the statute. Defendant maintains that the statutory exclusion was correctly applied.

The facts of this case are not in contention. The only question is whether the law has been correctly applied. Prior to March 31, 1991, Claimant was disabled by alcoholism as that impairment was defined before the March 29, 1996 effective date of the Amendment. In the time period between the expiration of Claimant's disability insured status and the enactment of the Amendment, Claimant became disabled by heart problems and ceased to be disabled by alcoholism. Nevertheless, because Claimant's heart problems did not become disabling prior to the expiration of his disability insure status, the Commissioner denied benefits. Claimant contends that because he was, at any given time, disabled by an impairment recognized by the law existing at the time of the impairment, he was under a continuing disability and is now entitled to benefits.[1] After careful consideration of Claimant's argument, this court cannot agree.

*The Disability Insurance Statutory Scheme*

This case requires an understanding of the DIB statutory scheme.

---

1. Claimant's argument makes the assumption that two unrelated disabilities can be tacked together to form a continuous period of disability. This court's research has neither validated nor invalidated that assumption. The only relevant law is apropos only by analogy: The social security regulations allow separate impairments occurring at the same time to be stacked together so that the combined effect can be considered in determining whether the claimant suffers from a severe impairment.

*See* 20 C.F.R. § 404.1522(b) (1998). On the other hand, two or more unrelated severe impairments occurring in sequence but not at the same time cannot be tacked together to form a continuous twelve-month period as required to meet the durational test for disability. *See id.* at (a). Because resolution of the question of whether tacking is permitted is not required to resolve this case, it will not be addressed further.

The social security system provides two types of benefits based on an inability to engage in substantial gainful activity. The first type, supplemental security income, provides benefits to disabled individuals who meet low-income requirements regardless of whether the individuals have ever worked or paid into the social security system. *See* 20 C.F.R. § 416.202 (1998); *see also Henley v. Commissioner of Social Security*, 58 F.3d 210, 213 h. 4 (1995) ("Insurability is a prerequisite to receipt of disability benefits but not to receipt of SSI benefits.") The second type, disability insurance, provides benefits to disabled individuals who have paid into the social security system. *See* 42 U.S.C. § 423(a)(1). As the name suggests, disability insurance operates as a type of insurance against disability. Just as an insurance policy would lapse after the policy owner ceases to pay the premiums, the same is true for disability insurance. *See* 20 C.F.R. § 404.101 (1998). Within a certain period of time after the individual stops paying into the social security system, the individual loses his eligibility for benefits. *See id.* To continue receiving benefits after losing his disability insured status, a claimant must demonstrate that he became disabled prior to the expiration of his disability insured status. *See Flaten v. Secretary of Health & Human Servs.*, 44 F.3d 1453, 1459 (9th Cir.1995). The relevant statute provides:

(1) Every individual who—

(A) is insured for disability insurance benefits . . .,

(B) has not attained retirement age . . .,

(C) has filed application for disability insurance benefits, and

(D) is under a disability,

shall be entitled to a disability insurance benefit.

42 U.S.C. § 423(a)(1). It is the accepted and sensible interpretation of this language that the four listed requirements "must be satisfied simultaneously for the period of disability currently claimed."

*Flaten v. Secretary of Health & Human Servs.,* 44 F.3d 1453, 1459 (9th Cir.1995). The claimant must be under a disability at the same time that he is insured for disability insurance benefits. *Id.* In the instant case, this means that Claimant must demonstrate that he suffered from a recognized disability at the same time that he was insured.

*Application of the Amendment*

On March 29, 1995, Congress amended the SSA, excluding alcoholism as a basis for disability. Congress specifically defined how the Amendment is to be applied:

The Amendments . . . shall apply to any individual who applies for, or whose claim is finally adjudicated by the Commissioner of Social Security with respect to, benefits . . . based on disability on or after the date of the enactment of this Act, and, in the case of any individual who has applied for, and whose claim has been finally adjudicated by the Commissioner with respect to, such benefits before such date of enactment, such Amendments shall apply only with respect to such benefits for months beginning on or after January 1, 1997.

Pub.L. 104–121, § 105(a)(5)(A), 110 Stat. 847, 853 (1996). The ambiguity of this language has fostered two competing interpretations: the "disability interpretation" and the "adjudication interpretation." *See Maggard v. Apfel,* 167 F.3d 376, 379 (7th Cir.1999). The former interpretation applies the Amendment "only to those [applicants] for whom the *onset of disability* occurred after the date of enactment." *Id.* The latter interpretation, on the other hand, applies the Amendment "to those whose claims had not been *finally adjudicated* as of . . . the effective date of the new legislation." *Id.* Upon review, this court finds that the only reasonable interpretation of the language precludes an award of benefits to an individual whose claim was not finally adjudicated prior to the effective date of the Amendment.

The two interpretations result from the phrasing, "disability on or after the date of enactment." The proximity of "disability" to the modifying phrase, "on or after the date of enactment" has led several courts to conclude that the modifier refers to "disability" rather than "finally adjudicated." In *Torres v. Chater*, 125 F.3d 166 (3d Cir.1997), the Third Circuit concluded that the more sensible interpretation is that "on or after the date of enactment" refers to application or final adjudication rather than onset of disability. *Id.* at 170. This court now adopts the Third Circuit's cogent reasoning.

A careful reading of the statute reveals that the adjudication interpretation makes far more sense. It is clear that the language is creating two categories of persons who will be affected differently by the statute. The disability interpretation would separate the categories according to the date of disability. The adjudication interpretation, on the other hand, would separate according to the date on which the claim was finally adjudicated. Comparison of the language employed to create each category is helpful in determining which interpretation is correct:

CATEGORY 1

- any individual
- who applies for
- or
- whose claim is finally adjudicated
- by the Commissioner of Social Security
- with respect to
- benefits under Title II of the Social Security Act
- based on disability
- on or after the date of the enactment of this Act

CATEGORY 2

- any individual
- who has applied for
- and
- whose claim has been finally adjudicated
- by the Commissioner
- with respect to
- such benefits

- before such date of enactment

Notably, category one connects "who applies for" and "whose claim is finally adjudicated" with the disjunctive "or" whereas category two connects its parallel phrasing with the conjunctive "and." The relevance of this distinction is this: If "on or after the date of [ ] enactment" in the first category refers to "disability", there is no need for a disjunctive connector because there is no consequential difference between a claim initiated and one finally adjudicated because either one concerns a claim that was void from the start if the onset date was after March 29, 1996. Had the statute been phrased, "any individual who applies for benefits based on disability on or after the date of enactment", the meaning would not have been altered. Thus, the phrase, "whose claim is finally adjudicated", retains no independent meaning under the disability interpretation. In contrast, the adjudication interpretation allows each phrase its own meaning. By linking "whose claim is finally adjudicated" to the modifier, "on or after the date of [ ] enactment", the former phrase becomes significant: it exists because it draws the line between the two categories. Simply put, if the line is drawn according to the date of disability rather than the date of final adjudication, the final adjudication language is superfluous. *See Torres*, 125 F.3d at 171. The adjudication interpretation observes the principle of statutory construction that statutes are to be interpreted in such a way that allows each provision an independent meaning. *See Green v. French*, 143 F.3d 865, 870 (4th Cir.1998).[2]

### Claimant's Equal Protection Challenge

Claimant argues that application of the Amendment according to date of adjudication rather than date of disability denies equal protection. Despite the creativity of

---

**2.** The court noted that the phrase, "based on disability", does not lose its meaning under the adjudication interpretation. As part of the larger phrase, "benefits under Title II of the Social Security Act based on disability", the phrase, "based on disability" clarifies that the Amendment applies only to a specific type of Title II claim. Old-age and survivors benefits are also available under Title II. *See* 42 U.S.C. § 402. Thus, the phrase, "based on disability" is neither redundant nor meaningless under the adjudication interpretation.

this argument, this court finds no violation of equal protection.[3]

■■■■ Unless a law's unequal treatment is based on a suspect or quasi-suspect classification such as race, alienage, national origin, gender or illegitimacy, *See Korematsu v. United States,* 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1944) (race/national origin); *Graham v. Richardson,* 403 U.S. 365, 376, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage); *Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988) (illegitimacy); *Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 723–24 & n. 9, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) (gender), the law need only have a rational basis. To have a rational basis, the classification must be rationally related to the furtherance of a legitimate government interest. *United States Dep't of Agriculture v. Moreno,* 413 U.S. 528, 533, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Thomasson v. Perry,* 80 F.3d 915, 928 (4th Cir.1996). Moreover, Congress's allocations of social welfare resources are considered under a strong presumption of constitutionality. *See Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981).

Claimant contends that he must be afforded the same protection that is given to individuals whose claims were finally adjudicated prior to the effective date of the Amendment. These individuals received benefits for the same time period during which Claimant alleges he was disabled. Arguably[4], if Claimant had applied earlier, he would still be receiving benefits due to his continuing heart problems. Claimant asserts that the law unfairly denies equal protection by treating him differently from a person who was more timely in seeking benefits.

■■■ Although the result here is—to a certain degree—unfair, not every unfairness rises to the level of an equal protection violation. A classification based on time of application is not suspect. It does not hinge on race, national origin, alienage, gender or illegitimacy. Thus, the appropriate standard of review is rational basis. Accordingly, the only question before this court is whether the classification bears a rational relationship to a legitimate government interest.

■■■ The rational basis test is applied through a two-step analysis. *See Smith Setzer & Sons, Inc. v. South Carolina Procurement Review Panel,* 20 F.3d 1311, 1320 (4th Cir.1994). "First, we must determine whether the purpose that animates these laws and regulations is legitimate. Second, we must determine whether it was 'reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose.'" *Id.* (quoting *Western & Southern Life Ins. Co. v. State Bd. of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981))

■■■ In this case, the legitimate government goal is the immediate diversion of cash paid to alcoholics and drug addicts. Congress acted on a belief that the pre-Amendment social security system discouraged alcoholics and drug addicts from

**3.** This court's research has revealed two prior equal protection challenges to the Amendment. *See Mitchell v. Apfel,* 19 F.Supp.2d 523, 525 (W.D.N.C.1998); *Stengel v. Callahan,* 983 F.Supp. 1154, 1162 (N.D.Ill.1997). These challenges were based on arguments that the statute denies equal protection by arbitrarily treating drug addiction and alcoholism differently than other disabilities. *See Mitchell,* 19 F.Supp.2d at 526; *Stengel* 983 F.Supp. at 1162. Both courts concluded that the statute does not violate equal protection. *See Mitchell,* 19 F.Supp.2d at 530–31; *Stengel* 983 F.Supp. at 1167. Claimant's argument is distinct from these previous cases in that the equal protection violation which he advocates focuses on the differential treatment between those whose applications were finally adjudicated prior to enactment of the Amendment and those whose applications were not.

**4.** As stated previously, Claimant's argument rests on the assumption that two unrelated disabilities can be tacked together to form a continuous period of disability.

overcoming their addictions. *See* H.R. No. 104–379, sec. 7 (1995) ("The result [of the pre-Amendment system] is a perverse incentive that affronts working taxpayers and fails to serve the interests of addicts and alcoholics, many of whom use their disability checks to purchase drugs and alcohol, thereby maintaining their addictions.") Accordingly, Congress determined that the money allocated to disability compensation for alcoholics and drug addicts was better spent on treatment programs. *See id.* ("The proposal would convert part of the savings to taxpayers into additional Federal funding to States for drug and alcohol treatment, providing an incentive for States to provide treatment to former recipients."). This court finds this to be a legitimate government interest.

The remaining question is whether the classification based on date of adjudication serves to further the government interest. This court finds that it does. The unique nature of alcoholism and drug addiction as a disability is that compensatory cash can actually serve to exacerbate the problem by enabling the individual to purchase the very item which causes the impairment. Congress made the difficult choice to withdraw that money from the disability compensation funds and spend it, instead, on treatment. Stopping the flow of funds according to the date of adjudication hastens this diversion of funds. The law's retroactivity prevents back payments from hindering the flow of money to treatment facilities. This court finds that the disparate treatment of applicants according to their date of final adjudication furthers the legitimate government goal of putting a swift end to the outflow of funds in a manner which Congress has deemed to exacerbate the problem of drug addiction and alcoholism.

After careful consideration, this court concludes that the Amendment applies to all claimants whose applications were not finally adjudicated prior to March 29, 1996 and that this result does not violate equal protection. Thus, the Commissioner's decision denying benefits is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Judgment on the Pleadings is GRANTED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

### JUDGMENT ORDER

In accordance with the MEMORANDUM OPINION entered this day, it is hereby **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment is **DENIED;** and

(2) Defendant's Motion for Judgment on the Pleadings is **GRANTED;** and

(3) The final decision of the Commissioner is **AFFIRMED;** and

(4) This action is **DISMISSED** from the docket of this court.