Sidney S. ZIPKIN, Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.

No. 630, Docket 85–6286.

United States Court of Appeals, Second Circuit.

Argued Jan. 22, 1986.

Decided April 25, 1986.

David Rothenberg, Rochester, N.Y. (Geiger & Rothenberg, Rochester, N.Y., of counsel), for plaintiff-appellant.

Joseph V. Willey, New York City (Ronald Robertson, General Counsel, Dept. of Health and Human Services, Salvatore R. Martoche, U.S. Atty., W.D.N.Y., Rochester, N.Y., of counsel), for defendant-appellee.

Before MANSFIELD, MESKILL and PIERCE, Circuit Judges.

PER CURIAM:

This is an appeal from a judgment of the United States District Court for the Western District of New York, Michael Telesca, Judge, granting summary judgment to Margaret M. Heckler, as Secretary of the United States Department of Health and Human Services, in an action challenging the constitutionality of section 202(x) of the Social Security Act, 42 U.S.C. § 402(x), as applied by the Secretary in suspending appellant's retirement benefit insurance payments during his incarceration for a felony conviction.

Since 1982, Sidney S. Zipkin's sole source of income was his monthly Social Security retirement benefits payments of $444.20, from which $12.20 was deducted for payment of Medicare premiums. On August 9, 1983, Zipkin was convicted in Monroe County Court of the felony of third degree robbery after entering a plea of guilty. He began serving a term in prison on October 5, 1983. By letter dated November 28, 1983, the Department of Health and Human Services informed Zipkin that his retirement benefits would be suspended during the period of his incarceration for conviction of a felony, pursuant to Public Law 98–21, 42 U.S.C. § 402(x), which became effective on May 1, 1983. The plaintiff requested reconsideration of that decision. The Secretary affirmed the decision upon reconsideration, and further determined that Zipkin had been overpaid certain benefits during the initial months of his incarceration. Zipkin was granted a hearing on August 28, 1984 before an administrative law judge, who upheld the payment suspension by a decision dated September 12, 1984. That decision was affirmed by the Appeals Council.

Following his release from prison, Zipkin's retirement benefits recommenced. Zipkin, *pro se*, brought suit in the district court on February 25, 1985 to recover payments withheld during his incarceration on the theory that section 202(x) was unconstitutional as applied. Zipkin appeals herein from the district court's grant of the Secretary's motion for summary judgment.

Section 202(x) suspends payment of all monthly benefits to persons imprisoned as felons.[1] Zipkin argues first that section

---

1. Section 202, 42 U.S.C. § 402(x), provides in pertinent part:

202(x) is not rationally related to any legitimate government purpose, and thus violates due process and equal protection. We disagree. Since incarcerated felons are not a suspect classification, *see, e.g., Greenwell v. Walters,* 596 F.Supp. 693, 695–96 (M.D.Tenn.1984), our standard of review is the rational relation test. The withholding of a noncontractual benefit such as the Social Security retirement benefit is unconstitutional only where "the statute manifests a patently arbitrary classification, utterly lacking in rational justification." *See Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960); *see also, Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981); *Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971); *Buccheri-Bianca v. Heckler,* 768 F.2d 1152, 1154 (10th Cir. 1985). Since Congress is "the appropriate representative body" to allocate social welfare resources, such allocations are accorded "a strong presumption of constitutionality...." *Schweiker,* 450 U.S. at 230, 101 S.Ct. at 1080.

In enacting section 202(x), Congress apparently based that legislation on the policy rationales underlying a former statute, 42 U.S.C. § 423(f)(1) (now repealed), suspending *disability* payments to incarcerated recipients. *See* H. Conf.Rep. No. 98–47, 98th Cong., 1st Sess., *reprinted in* [1983] U.S. Code Cong. & Admin. News 143, 404, 447–48; *see also, Yopp v. Secretary,* No. G83–1157, slip op. at 5 (W.D.Mi.1985). Those rationales were principally that: (1) "[t]he disability program exists to provide a continuing source of income to those whose earnings are cut off because they have suffered a severe disability," and (2) "[t]he need for this continuing source is clearly absent in the case of an individual who is being maintained at public expense in prison." S.Rep. No., 96–987, 96th Cong., 2d Sess., *reprinted in* [1980] U.S. Code Cong. & Admin. News 4787, 4794–95; *see also, Yopp,* slip op. at 5.

The mere fact that Congress did not expressly restate these rationales in enacting section 202(x) is of no moment. Both the retirement benefit suspension disputed here and the disability benefit suspension are part of a comprehensive scheme designed to provide income to certain members of the workforce who can not generate their own incomes, and to conserve the Social Security fisc when the essential economic purposes of that income is provided through a different public mechanism—a prison.

We can perceive no reason why prisoners whose retirement benefits are suspended would have a need for replacement of income while prisoners whose disability benefits are suspended do not. Rather, prisoners, as a group, do not have the need for a continuing source of income that nonprisoners typically may have. *See Washington v. Secretary,* 718 F.2d 608, 611 (3d Cir.1983). Indeed, for this reason the suspension of retirement or disability benefits to an incarcerated recipient is analytically no different from the termination of auxiliary benefits, pursuant to 42 U.S.C. § 402(d)(1), due to changed economic circumstances such as the marriage of a dependent child or the divorce of a dependent spouse. *See Califano v. Jobst,* 434 U.S. 47, 53, 98 S.Ct. 95, 99, 54 L.Ed.2d 228 (1977); *Mathews v. DeCastro,* 429 U.S. 181, 188, 97 S.Ct. 431, 435–36, 50 L.Ed.2d 389 (1976).[2]

---

(x)(1) Notwithstanding any other provision of this title, no monthly benefits shall be paid under this section or under section 223 to any individual for any month during which such individual is confined in a jail, prison, or other penal institution or correctional facility, pursuant to his conviction of an offense which constituted a felony under applicable law, unless such individual is actively and satisfactorily participating in a rehabilitation program which has been specifically approved for such individual being able to en-

gage in substantial gainful activity upon release and within a reasonable time.

**2.** However, nothing in our opinion today should be construed to mean that benefits to dependents of incarcerated felons may be terminated. That issue is not before us, and we therefore make no ruling as to it. As to that issue, we note only that section 402 seems to leave such benefits intact. *See* H.Conf.Rep. No. 98–47, *supra,* [1983] U.S. Code Cong. & Admin. News at

Finally, Social Security retirement benefits are designed to satisfy certain baseline economic needs reasonably predictable when a worker retires. *See, e.g., Buccheri-Bianca, supra;* Comm.Serial No. 96–103, *Receipt of Social Security Benefits by Persons Incarcerated, Hearings Before Subcommittee on Social Security of House Comm. on Ways and Means,* 96th Cong., 2d Sess. at 24–25, 82 (June 20, 1980) ("Hearings"). They are not benefits held in trust and payable *per se. Compare Ellis Nat'l Bank v. Irving Trust,* 786 F.2d 466 (2d Cir.1986) (vested ERISA pension benefits may not be alienated even where based on employee's illegal earnings).

■ We find no merit in Zipkin's contention that the rehabilitation exception to section 202(x) renders that subsection unconstitutional as applied to former retirement benefit recipients. Section 202(x) allows prisoners who would otherwise be denied disability benefits to receive them if they participate in a rehabilitation program "expected to result in such individual being able to engage in substantial gainful activity upon release and upon a reasonable time." 42 U.S.C. § 402(x)(1). We read the rehabilitation exception as an incentive for disabled prisoners to pursue physical and vocational rehabilitation programs which would ultimately reduce or eliminate their disability benefits. The reduction in the rolls of those receiving disability benefits would, therefore, promote Congress' underlying policy of conserving scarce Social Security resources. Thus, the rehabilitation exception is rationally related to a legitimate congressional objective.

■ We thus hold that section 202(x) rationally reflects the policy that prisoners' Social Security retirement benefit payments be suspended since their substantial economic needs are already met. Any contemporaneous payment of Social Security funds in our view would be wasteful.[3] Since we uphold the statute as applied on this basis, we need not reach the additional argument that the statute promotes prison discipline by denying to inmates funds that might be used to engage in illicit conduct or otherwise to undermine correctional facility administration. *See Hearings, supra,* at 25, 64, 68, 75.

■ Zipkin also argues that the suspension of his retirement benefits violated due process by precluding him from demonstrating at any of the administrative hearings certain needs, such as for vitamins, foot powder and denture powder, not provided by the prison. A similar argument was properly rejected in *Hopper v. Schweiker,* 596 F.Supp. 689, 692–93 (M.D. Tenn.1984), *aff'd without opinion, Hopper v. Secretary,* 780 F.2d 1021 (6th Cir.1985), where it was held sufficient that "[t]he fundamental needs of inmates, such as food, shelter, clothing and medical care are provided during the period of incarceration." Given the "expense and other difficulties of individual determinations," *Weinberger v. Salfi,* 422 U.S. 749, 777, 95 S.Ct. 2457, 2473, 45 L.Ed.2d 522 (1975), Congress properly devised an administratively efficient method of allocating Social Security resources that assumes an approximate correlation between a prisoner's needs and the services provided by the prison. *See also Schweiker v. Gray Panthers,* 453 U.S. 34, 47–48, 101 S.Ct. 2633, 2642, 69 L.Ed.2d

448 ("Benefits of dependents and survivors of incarcerated felons would not be affected.").

**3.** In so holding, we agree with the result reached in *Buccheri-Bianca v. Heckler,* 768 F.2d 1152 (10th Cir.1985) and in *Yopp v. Secretary of Health and Human Services,* No. 683–1157 CA (W.D.Mich. Feb. 12, 1985). We also note that courts have consistently upheld the amendment as it applies to the suspension of disability benefits. *See Jensen v. Heckler,* 766 F.2d 383 (8th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 311, 88 L.Ed.2d 288 (1985); *Hopper v. Schweiker,* 596

F.Supp. 689 (M.D.Tenn.1984), *aff'd without opinion, Hopper v. Secretary,* 780 F.2d 1021 (6th Cir.1985); *Calogero Davi v. Heckler,* Unemp.Ins. Rptr., (CCH) ¶ 16,053 (E.D.N.Y. Nov. 21, 1984); *Pace v. United States,* 585 F.Supp. 399 (S.D.Tex. 1984); *Washington v. Secretary of Health and Human Services,* 718 F.2d 608 (3d Cir.1983); *Anderson v. Social Security Administration,* 567 F.Supp. 410 (D.Colo.1983); *Cobb v. Secretary of Health and Human Services,* No. 81–60224 (E.D. Mich. July 21, 1982); *Moreno v. Schweiker,* No. 82–180 PHX–WEC (D.Ariz., July 8, 1982).

**20**

460 (1981); *Knebel v. Hein,* 429 U.S. 288, 296–97, 97 S.Ct. 549, 554–55, 50 L.Ed.2d 485 (1977); *Clayborne v. Califano,* 603 F.2d 372, 380 (2d Cir.1979); *Gray Panthers v. Administrator, Health Care Financing Admin.,* 566 F.Supp. 889, 893 (D.D.C.1983). If Zipkin had special needs beyond these, or if the prison failed to provide essential economic goods and services, then Zipkin's remedy was to challenge the adequacy of prison care. However, he may not on this basis successfully challenge the constitutionality of Congress' economically and administratively rational allocation of Social Security resources.

Affirmed.