**Jacqueline MILNER, and Kurt R. Johnson, Individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**John J. CALLAHAN, Acting Commissioner of Social Security, Defendant.**

No. 96 C 4302.

United States District Court, N.D. Illinois, Eastern Division.

July 21, 1997.

Mark Joseph Heyrman, Mandel Legal Aid Clinic, Chicago, IL, for Plaintiffs.

Joseph M. Ferguson, U.S. Attorney's Office, Chicago, IL, for Defendant.

*MEMORANDUM AND ORDER*

MORAN, Senior District Judge.

Plaintiffs Jaqueline Milner and Kurt Johnson are individuals who have been confined to an Illinois state mental health institution after having been found not guilty of a felony by reason of insanity. Upon their confinement, plaintiffs' social security benefits were suspended pursuant to 42 U.S.C. § 402(x)(1)(A)(ii)(II), which forbids payment to any individual who is currently "confined

by court order in an institution at public expense in connection with ... a verdict or finding that the individual is not guilty of [a felony] by reason of insanity." In response, they have brought this suit claiming that 42 U.S.C. § 402(x)(1)(A)(ii)(II) violates their Fifth Amendment right to equal protection of the laws.[1] Plaintiffs and defendant now make cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P.12(c). For the following reasons, defendant's motion is granted and plaintiffs' is denied.

The provision being challenged, 42 U.S.C. § 402(x)(1)(A)(ii)(II), is one of a series of provisions added to the Social Security Act in 1994 to make limitations on the payment of benefits broader and more consistent. Before the 1994 amendments, 42 U.S.C. § 402(x) denied all monthly social security payments to persons in custody pursuant to a felony conviction, except those involved in a court-approved rehabilitation program. The rationale for this law was stated in the Senate committee report on its predecessor provision, 42 U.S.C. § 402(f) (now repealed).[2] The report stated:

> The committee believes that the basic purposes of the social security program are not served by the unrestricted payment of benefits to individuals who are in prison or whose eligibility arises from the commission of a crime. The disability program exists to provide a continuing source of monthly income to those whose earnings are cut off because they have suffered a severe disability. The need for this continuing source of income is clearly absent in the case of an individual who is being maintained at public expense in prison.

S.Rep. No. 96–96–987 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4787, 4794–4795. After several years Congress found that § 402(x) created a number of inconsistencies that needed to be addressed by statutory amendment. As the House committee report on the proposed 1994 amendments said:

The provision would broaden the current limitation on Social Security benefits to incarcerated felons and extend this limitation to criminally insane individuals confined to institutions by court order at public expense. In making these changes, Congress is seeking to establish greater consistency in the policy that Congress enacted in 1980 banning Social Security benefit payments to incarcerated felons. That limitation recognizes that prisoners receive full support from public resources in the form of food, clothing, lodging, and basic health care. In the committee's view, the same situation exists in the case of criminally insane individuals who are confined to institutions at public expense.

H.R.Rep. No. 103–491 (1994), reprinted in 1994 U.S.C.C.A.N. 3266. The 1994 amendments alter § 402(x) in three primary ways: they extend the suspension of social security benefits to cover the criminally insane as well as incarcerated felons, 42 U.S.C. § 402(x)(1)(A)(ii) they eliminate the exception for incarcerated felons participating in a rehabilitation program, 42 U.S.C. § 402(x)(1)(A)(i); and they state explicitly that the suspension of benefits does not apply to parolees who are no longer living at public expense, 42 U.S.C. § 402(x)(1)(B)(i). Taken together, these amendments ensure that the suspension of social security payments applies to a broader range of individuals confined at public expense, and that the suspension does not apply to any individuals who are not so confined.

Plaintiffs claim that the 1994 amendments violate the Equal Protection Clause because they allow payments to those patients who are civilly committed, either voluntarily or involuntarily, but disallow payments to criminally insane individuals. If Congress' goal is to conserve the public fisc, plaintiffs argue, it is irrational to suspend benefits to the criminally insane but to grant benefits to other mentally ill individuals housed in public insti-

---

**1.** After plaintiffs' requests for reconsideration were denied the Social Security Administration, they agreed to an expedited appeal process under 20 C.F.R. § 404.923–404.928. For the purposes of this appeal, plaintiffs accept both the Commissioner's factual determinations and his interpretation of the statute.

**2.** 242 U.S.C. § . 2(f) merely denied disability benefits to incarcerated felons. § 402(x) expanded the exclusion to cover all monthly social security payments.

tutions. Both groups reside in mental hospitals at public expense, and so both should be entitled to the same social security benefits. Therefore, plaintiffs argue, the 1994 amendments are unconstitutional.

A serious obstacle lies in the way of plaintiffs' claim, however—one which they never adequately address. Before the 1994 amendments, 42 U.S.C. § 402(x) denied benefits to an even smaller group of individuals: incarcerated felons. And yet that provision survive numerous constitutional challenges. *See e.g., Wiley v. Bowen,* 824 F.2d 1120 (D.C.Cir. 1987) (law was not intended as punishment, and therefore was not an *ex post facto* law); *Andujar v. Bowen,* 802 F.2d 404 (11th Cir. 1986) (law was not a due process violation, punishment without trial, bill of attainder or *ex post facto* law); *Zipkin v. Heckler,* 790 F.2d 16 (2d Cir.1986) (law did not violate equal protection or due process guarantees); *Peeler v. Heckler,* 781 F.2d 649 (8th Cir.1986) (not *ex post facto* law); *Jones v. Heckler* 774 F.2d 997 (10th Cir.1985) (not bill of attainder, *ex post facto* law, or violation of double jeopardy clause); *Buccheri–Bianca v. Heckler,* 768 F.2d 1152 (10th Cir.1985); *Washington v. Secretary of Health and Human Services,* 718 F.2d 608 (3d Cir.1983). These challenges failed because the courts found that § 402(x) was a reasonable means for achieving the legitimate goal of conserving the public fisc. Because convicted felons are not considered a suspect class, *Zipkin v. Heckler,* 790 F.2d at 18, and because social security payments are noncontractual benefits under a social welfare program, the statute could only be invalidated if it " 'manifest[ed] a patently arbitrary classification, utterly lacking in rational justification.' " *Id.* (quoting *Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960)). The courts agreed that the essential purpose of the Social Security Act was not furthered by making payments to felons who were confined at public expense, and that the decision to withhold these payments served the important purpose of preserving limited resources for those who need them.

As the cases cited above indicate, the fact that § 402(x) does not suspend payments to every individual housed at public expense does not in itself invalidate the statute. There is no constitutional requirement that legislative classifications be perfect or all-encompassing. As the Supreme Court has said:

> The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply the remedy there, neglecting the others. The prohibition of the Equal Protection Clause goes no further than the invidious discrimination.

*Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 488, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955) (citations omitted). This admonition applies especially strongly to judicial review of Congressional allocations of scarce welfare resources, which are accorded a "strong presumption of constitutionality." *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186 (1981). Such decisions can only be overturned where there is "unmistakable evidence of punitive intent" against the group that is disadvantaged by the allocation. *Flemming v. Nestor,* 363 U.S. at 619, 80 S.Ct. at 1377.

Plaintiffs have simply not presented sufficient evidence that the 1994 amendments were intended to punish or harm the criminally insane. Although plaintiffs have supplied a statement by one legislator that could be read as expressing a desire to punish the criminally insane,[3] the statement of an individual legislator is insufficient to show discriminatory intent on the part of the whole Congress. The bulk of the evidence indicates that Congress was legitimately concerned with conserving scarce resources.

---

3. "To allow the criminally insane to collect benefits is an affront to the families of the victims of their terrible acts, as well as to hard-working taxpayers." Statement of Representative Bunning, 140 Cong. Rec. H11014, H11017.

Moreover, as we have noted above, the 1994 amendments appear to make § 402(x) broader and more consistent, and less focused on the question of blame. If anything, the provision as it now stands appears less discriminatory than it did before the 1994 amendments.

 Although Congress could extend the exclusions of § 402(x) to cover those who are civilly committed, the fact that it has not done so does not invalidate the current statute. As defendants have pointed out, Congress may have believed that extending the exclusion to all persons committed at public expense would be too difficult to implement effectively. A great variety of individuals have been committed to public institutions for a great variety of reasons, and the length of commitment varies from person to person and from state to state. Congress could reasonably have found that criminally insane individuals who are alleged to have committed felonies are likely to be confined in public institutions for a fairly long time. The expected length of incarceration, combined with the relative ease of identifying individuals who are committed by way of the criminal justice system, may justify the administrative burden of temporarily suspending their benefits. Such may not be the case with those who are civilly committed. Of course, it is impossible to discern whether Congress actually took these issues into account. Very possibly the question of suspending benefits for the civilly committed never arose. But we must uphold the statute so long as there is any conceivable rational basis for the classifications it makes. *See Heller v. Doe by Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 2642–43, 125 L.Ed.2d 257 (1993). We need not ponder the difficult question of whether the proffered reason for the classification is one that actually motivated the Congress.

In upholding he statute, we note that the 1994 amendments go no further than necessary to accomplish the statute's fiscal goals. Benefits are only suspended while the individual is confined at public expense. They are reinstated the month after his or her release, even if he or she is still under correctional supervision. Finally, the exclusion does not extend to dependents of the individual whose benefits have been suspended. 42 U.S.C. § 402(x)(2). Although 42 U.S.C. § 402(x)(1)(A)(2) is not perfect, it is not unconstitutional.

### CONCLUSION

For the foregoing reasons, defendant's motion for judgment on the pleadings is granted, and plaintiffs' is denied.