**Frank LANGELLA, Plaintiff,**

v.

**Hon. George W. BUSH, President of the United States of America, Attorney General John Ashcroft, Katherine Edgell, A.L.J., Peter N. Dowd, A.L.J., Government of the United States of America, Social Security Administration, Government of the United States of America, Justice Department, Defendants.**

**No. 03 Civ. 5114(RWS).**

United States District Court, S.D. New York.

March 3, 2004.

Frank Langella, Yonkers, NY, pro se.

David Kelley, United States Attorney for the Southern District of New York, New York City, By: Heather K. McShain, Assistant U.S. Attorney, of counsel, for Defendants.

## OPINION

SWEET, District Judge.

Defendants George W. Bush, President of the United States of America; Attorney General John Ashcroft; Katherine Edgell, Administrative Law Judge ("ALJ"); Peter N. Dowd, ALJ; the Government of the United States of America; the Social Security Administration ("SSA"); and the Government of the United States of America, Justice Department (collectively, "Defendants") have moved to dismiss plaintiff Frank Langella's ("Langella") claims pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Langella has moved to deny and dismiss Defendants' memorandums of law.[1] For the reasons set forth below, Defendants' motion to dismiss the complaint is granted in part and denied in part, and Langella's motions are denied.

### Prior Proceedings

On April 19, 1994, Langella was convicted of extortion in violation of 18 U.S.C. § 1951(a). He applied for retirement benefits and began receiving them in the summer of 1994, after his conviction but before his 18–month sentence began in the summer of 1995.

On July 28, 1996, the SSA notified Langella that it was stopping his retirement benefits because he was imprisoned for a felony conviction, and that the SSA had overpaid Langella $9,577 by erroneously continuing to pay him retirement benefits for the first 13 months of his incarceration in contravention of 42 U.S.C. § 402(x)(1)(A). This statute provides that "no monthly benefits shall be paid under this section ... of this title to any individual for any month ... throughout all of which such individual (i) is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense."

On October 17, 1996, Langella requested that the SSA waive recovery of the overpayment under 20 C.F.R. § 404.506(a), which provides that there shall be no recovery of overpayment to an individual who is without fault. After finding that Langella was not without fault in causing or accepting the overpayment, the SSA denied the request. Langella then requested a hearing before an ALJ which was held on September 24, 1998. The ALJ denied Langella's request for the waiver.

On March 17, 2000, Langella filed a suit against several defendants, including the Government of the United States of America; William J. Clinton, U.S. President; Janet Reno, Attorney General of U.S.A.; General Counsel, Social Security Administration; Kenneth F. Apfel, Commissioner Social Security Administration; Pamela D. Crawford, Appeals Council, Social Security Administration; John Doe, Peekskill Social Security Agency; Jane Doe, Peekskill Social Security Agency; and Herbert Rosenstein, ALJ. He claimed that the Commissioner erred in denying the waiver, that 42 U.S.C. § 402(x) is unconstitutional in that it violates due process and equal protection, and that his rights were violated under ten of the Amendments to the Consti-

1. On December 31, 2003, a stay was granted on Langella's motions until a ruling was made on Defendants' motion to dismiss. The stay will be lifted at this time, and Langella's motions will be dealt with here.

tution. He sought damages of $3 million under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) ("FTCA"). *Langella v. United States ("Langella I"),* No. 00 Civ. 2067 (S.D.N.Y. April 21, 2000).

After twice granting Langella leave to file an amended complaint, this Court *sua sponte* dismissed the action because there is no *Bivens* jurisdiction to challenge denials of Social Security or SSI benefits; it was impossible to determine from Langella's submission whether the complaint was filed within the requisite sixty days of Langella's receipt of the Appeals Council letter; and the United States and the individual defendants, sued in their official capacities, were immune from suit.[2] (2/12/00 Order; 6/2/00 Order.) The Court of Appeals affirmed and also ruled that Langella's challenge to the constitutionality of 42 U.S.C. § 402(x) was meritless, but remanded the issue of waiver of recovery of overpayment to this Court with instructions to remand to the SSA for a new hearing. *Langella v. United States,* 6 Fed.Appx. 116 (2d Cir.2001). On August 1, 2001, this Court remanded to the SSA "for further proceedings on plaintiff's claim for waiver of overpayment under 20 C.F.R. § 404.506(a)." (8/1/01 Order.)

On December 19, 2001, before the new hearing was held, Langella filed a second suit against the United States and the United States Attorney for the Southern District of New York, acting in her official capacity, for claims arising out of *Langella I.* Langella alleged that the United States Attorney and the Court violated his rights under ten Amendments and committed torts against him, and he sought $1,600,000,000 in damages. *Langella v. United States ("Langella II"),* No. 01 Civ. 11583, 2002 WL 1218524 (S.D.N.Y. June 12, 2002). The complaint was dismissed for lack of jurisdiction over Langella's FTCA claims because he failed to administratively exhaust those claims and because the allegations did not state a cause of action in tort. The Court also held that Langella failed to state a claim under section 1983 or *Bivens,* and that there is no private right of action for obstruction of justice under criminal statutes. *Langella v. United States,* No. 01 Civ. 11583, 2002 WL 1218524, 2002 U.S.Dist. LEXIS 10039 (S.D.N.Y. June 4, 2002). The Court of Appeals affirmed on July 2, 2003. *Langella v. United States,* 67 Fed.Appx. 659 (2d Cir.2003).

While that case was pending, a hearing was held before an ALJ on June 21, 2002, and Langella's claim for waiver was again denied on July 26, 2002. By notice dated April 30, 2003, the Appeals Council advised Langella of his right to commence a civil action pursuant to 42 U.S.C. § 405(g) within 60 days from the date of receipt. The ALJ who presided over Langella's hearing and the ALJ who signed the notice are defendants in the present case.

Langella filed suit in this Court on July 10, 2003 (*"Langella III"*).[3] This case was

---

**2.** It was further noted that:
the 30–day period within which Langella was to file a second amended complaint has expired. Technically, therefore, Langella's complaint is subject to dismissal in its entirety for failure to file a second amended complaint within the requisite time. However, the pleadings of a pro se litigant are to be read liberally. *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). Therefore, Langella's "Reply" will be treated as a second amended complaint and his case will not be dismissed based on the mislabelling

of this most recent submission. (2/12/00 Order.)

**3.** Other actions filed by Langella in the Southern District of New York include:

— *Langella v. United States,* No. 01 Civ. 11583, 2002 WL 1218524 (S.D.N.Y. June 12, 2002) (relating to the United States Attorney's Office representation of defendants in *Langella v. United States,* No. 00 Civ.2067 (S.D.N.Y. April 21, 2000)) (*Langella II* );

assigned on to this Court on July 28, 2003 and accepted as related to *Langella I.*

Defendants submitted a Motion to Dismiss on October 21, 2003. This motion was marked fully submitted on December 24, 2003. Langella submitted a second motion to deny and dismiss Defendants' memorandum of law on December 4, 2003 and a third motion to deny and dismiss Defendants' memorandum of law on January 5, 2004.

### The Complaint

Langella presently (1) brings claims against the Defendants under the FTCA, (2) raises various tort and constitutional claims against the Defendants, (3) alleges that 42 U.S.C. § 402(x) is unconstitutional, and (4) appeals the SSA's decision denying his request for waiver of recovery of overpayment of retirement benefits. He seeks damages in the amount of $2,200,009,597. (Compl. at 13, 22.)

### The Rule 12(b)(1) and 12(b)(6) Standard

On a motion to dismiss pursuant to Rule 12(b)(1), plaintiff carries the burden of establishing that subject matter jurisdiction exists over his complaint. *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996).

In considering a motion to dismiss pursuant to Rule 12(b)(6), the court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002) (*citing Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir.2001)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 235–236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir.2000).

## I. Defendants' Motion to Dismiss

### A. There Is No Jurisdiction under the FTCA

#### 1. The Doctrine of Sovereign Immunity Bars Langella's FTCA Claims

The United States has sovereign immunity and is only subject to suit according to the terms of its consent to be sued. *United States v. Dalm*, 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) ("[T]he terms of the [United States'] consent to be sued in any court define [the] court's jurisdiction to entertain the suit.") (citations omitted). Langella brings a claim under the FTCA, which in certain circumstances provides for suits by citizens against the United States for torts committed by government agents.

Under the FTCA, suit must be brought directly against the United States, and federal agencies are immune from suit. 28 U.S.C. § 2679(a); *Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir.1975). As provided in 28 U.S.C. § 2679(b)(1), suit against the United States is the exclusive remedy in an

— *Langella v. United States*, No. 00 Civ. 2067 (S.D.N.Y. April 21, 2000) (relating to social security benefits) (*Langella I* );
— *Langella v. Brieant*, No. 98 Civ. 1781 (S.D.N.Y. Mar.12, 1998) (dismissing mandamus action);
— *Langella v. United States*, No. 97 Civ. 4947 (S.D.N.Y. Jul. 31, 1997) (relating to

a petition for a writ of habeas corpus under 28 U.S.C. § 2255); and
— *Langella v. United States*, No. 95 Civ. 918 (S.D.N.Y. May 18, 1995) (relating to a petition for a writ habeas corpus under 28 U.S.C. § 2255).

action for damages for injury or loss or property "resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."

Furthermore, in this case the United States may not be named as defendant in an FTCA suit because the Social Security Act specifically states that "no action shall be brought against the United States, the Commissioner of Social Security, or any officer or employee thereof ... to recover on any claim arising under this title." 42 U.S.C. 405(h). This is so even if the plaintiff raises constitutional claims. *Weinberger v. Salfi,* 422 U.S. 749, 761, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (holding that as the Social Security Act provides "both the standing and the substantive basis for the presentation of [the] constitutional contentions," "405(h) precludes resort to federal-question jurisdiction for the adjudication of appellees' constitutional contentions.").

■ Thus, as the Second Circuit explained in *Langella I,* "Langella cannot bring his claims under the Federal Tort Claims Act because negligent mishandling of social security benefits is not cognizable under this statute." *Langella,* 6 Fed. Appx. at 117.[4]

#### 2. *Langella's Does Not Meet the FTCA's Requirement of Administrative Exhaustion*

In addition, the FTCA requires that before a claimant may initiate an action against the United States, "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied." 28 U.S.C. § 2675(a). "The burden is on the plaintiff to both plead and prove compliance with the statutory requirements. In the absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's claim." *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 210, 214 (2d Cir.1987) (citations omitted). The requirement that an administrative claim be filed and finally denied "is jurisdictional and cannot be waived." *Keene Corp. v. United States,* 700 F.2d 836, 841 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *see also McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994).

■ In his complaint, Langella does not allege any facts relating to the exhaustion of administrative remedies. Furthermore, while Langella sought review of the SSA's denial of his claim of waiver, he did not file an administrative claim with respect to the alleged torts of the SSA.

#### B. *The Doctrine of Absolute Immunity Bars Langella's Tort Claims*

As explained in *Langella I* by the Second Circuit, the United States and the various individual defendants, sued in their official capacities are immune from suit. *Langella,* 6 Fed.Appx. at 117 (citing 42 U.S.C. § 405(h); *United States v. Nordic Village Inc.,* 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (discussing immunity of United States) *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994) (discussing federal officers acting in their official capacity); *Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990) (discussing judicial immunity)).

■ The Supreme Court has extended the doctrine of absolute immunity from

---

**4.** Although Langella argues that he is not asserting negligence, but criminal fraud, the Second Circuit recognized in *Langella I* that these identical issues were a case of negli-

gence. *Langella,* 6 Fed.Appx. at 117. Langella's claims are further barred under *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

tort liability to ALJs on the basis that the importance of preserving the independent judgment of ALJs outweighs the risk of an unconstitutional act by one presiding at an agency. *Butz v. Economou,* 438 U.S. 478, 514, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The alleged torts occurred while the ALJs were performing duties within the scope of their employment with the SSA and are entitled to absolute immunity from claims of damages arising out of their conduct.

**C. With the Exception of Langella's Tort Claims against the ALJs, the Doctrines of Res Judicata and Collateral Estoppel Bar Langella's Tort and Constitutional Claims**

With the exception of Langella's tort claims against the ALJs, Langella's tort and constitutional claims have been pursued in two previous actions and are thus barred by res judicata and collateral estoppel.

 "The doctrine of res judicata precludes the filing of repetitious actions seeking the same relief." *Spavento v. United States,* 891 F.Supp. 173, 174 (S.D.N.Y.1995). A judgment on the merits of an action precludes a party or its privies from relitigating issues that were or could have been raised in that action. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Rivet v. Regions Bank of La.,* 522 U.S. 470, 476, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998); *Greenberg v. Bd. of Governors of the Fed. Reserve Sys.,* 968 F.2d 164, 168 (2d Cir.1992). Res judicata thus precludes the subsequent litigation of any claims arising from the same transaction or series of transactions at issue in the prior suits. *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 126 F.3d 365, 369 (2d Cir.1997) (*citing Interoceanica Corp. v. Sound Pilots, Inc.,* 107 F.3d 86, 90 (2d Cir.1997)).

 In determining whether res judicata applies, a court must examine three factors: (1) whether the previous action involved a judgment on the merits; (2) whether the previous action involved the same parties or those in privity with them; and (3) whether the claims asserted in the present action were, or could have been, raised in the previous action. *Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 285 (2d Cir.2000).

 ■ *Langella I* and *Langella II* resulted in adjudications on the merits and both involved the same parties or those in privity with the same parties. Furthermore, the issues raised in the instant action were, or could have been, raised in *Langella I* and *Langella II.* The claim that the SSA erroneously denied Langella's request to waive the overpayment of retirement benefits has been raised in all three suits. Allegations that Defendants violated his rights under the Amendments have also been raised in all three suits, with the exception of the particular ALJs who have been sued only in the present case. The claim that 42 U.S.C. § 402(x) is unconstitutional is raised presently and was also raised in *Langella I.*

As the Second Circuit explained:
This court has ruled that the suspension of Social Security benefits during incarceration does not violate either due process or equal protection. *See Zipkin v. Heckler,* 790 F.2d 16, 19 (2d Cir.1986) (per curiam). Moreover, every circuit court to consider whether section 402(x) violates the prohibitions against bills of attainder or ex post facto laws has concluded that it does not, and we decline to take this opportunity to hold otherwise at this time.

*Langella,* 6 Fed.Appx. at 117.

 Likewise, Langella's tort and constitutional claims are barred by the doctrine of collateral estoppel, with the exception of his tort claims against the ALJs.

Collateral estoppel applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits. *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir.1986).

As stated above, the issues raised in this suit are identical to the prior proceedings. The claim that the SSA erroneously denied Langella's request to waive the overpayment of retirement benefits has been raised in all three suits. Allegations that Defendants violated his rights under the Amendments have also been raised in all three suits, with the exception of the particular ALJs who have only been sued in the present case. The claim that 42 U.S.C. § 402(x) is unconstitutional is raised presently and was also raised in *Langella I.* These issues were litigated and decided in the prior cases with a full and fair opportunity for litigation. Finally, the issues previously litigated were necessary to support a valid and final judgment on the merits.

### D. *Bennett v. Arkansas Is Inapplicable*

Langella cites the Supreme Court case *Bennett v. Arkansas,* 485 U.S. 395, 108 S.Ct. 1204, 99 L.Ed.2d 455 (1988) as the controlling law in this case. In *Bennett v. Arkansas,* there was a conflict between Arkansas law, which authorized the seizure of a prisoner's Social Security and Veterans' benefits in order to help defray the cost of maintaining its prison system, and federal law, which exempted these funds from legal process. *See* 42 U.S.C. § 407(a). The Supreme Court held that the Supremacy Clause prohibited Arkan-

sas from attaching prisoners' Social Security and Veterans' benefits. *Bennett* does not apply here as the SSA stopped the payment of Langella's retirement benefits; there is no conflict between state and federal law; and no state has sought to attach Langella's benefits.

### E. *Langella's Appeal of the SSA's Denial of Waiver of Recovery of Overpayment Survives*

Defendants further argue that Langella's appeal of the SSA's April 30, 2003 decision, denying his request for waiver of recovery of overpayment of retirement benefits pursuant to 42 U.S.C. § 402(x), is untimely as Langella did not file suit within the 60 days from receipt of notice as prescribed by statute.

42 U.S.C. § 405(g) provides, "Any civil action ... must be instituted within 60 days after ... notice of the decision by the Appeals Council is received by the individual.... [T]he date of receipt of ... notice of decision by the Appeals Council shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." *See also* 20 C.F.R. § 422.210(c). The plaintiff thus has 65 days from the date of a final decision notice to file suit. *Matsibekker v. Heckler,* 738 F.2d 79, 81 (2d Cir.1984); *Velez v. Apfel,* No. 99–6314, 2000 WL 1506193, at *1, 2000 U.S.App. LEXIS 25417, at *2–3 (2d Cir. Oct. 6, 2000).

Sixty-five days from the SSA's April 30, 2003 decision is Friday, July 4, a legal holiday. Under Fed.R.Civ.P. 6(a), the last day of a period shall not be included if it is a Saturday or Sunday or legal holiday. Langella thus had to file suit by July 7. Langella served his complaint on the United States Attorney's Office on July 2, 2003, and he filed his complaint with the *pro se* office on July 10, 2003.[5]

---

5. Langella claims that he filed his complaint on July 2, 2003 and just paid his fees on July

■ 42 U.S.C. § 405(g)'s sixty-day requirement is a statute of limitations that is subject to equitable tolling. *Bowen v. City of New York*, 476 U.S. 467, 480, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). Moreover, the statute containing this limitations period was designed by Congress to be "unusually protective of claimants." *Id.* at 480, 106 S.Ct. 2022 (*quoting Heckler v. Day*, 467 U.S. 104, 106, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984)). Because of the protective nature of the statute for claimants, the Second Circuit has observed that equitable tolling of the limitations period is "not infrequently appropriate." *State of New York v. Sullivan*, 906 F.2d 910, 917 (2d Cir.1990); *accord Canales v. Sullivan*, 936 F.2d 755, 758 (2d Cir.1991); *Davila v. Barnhart*, 225 F.Supp.2d 337, 338 (S.D.N.Y.2002).

■ For equitable tolling to apply, the plaintiff must establish that "exceptional circumstances" existed and that (s)he acted with "reasonable diligence." *Torres v. Barnhart*, No. 02 Civ. 9209, 2003 WL 22801538, at *3–4, 2003 U.S. Dist. LEXIS 21321, at *8–9 (S.D.N.Y. Nov. 21, 2003); *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir.2001). These circumstances exist in this case, where plaintiff is *pro se;* he timely served his complaint on Defendants; and he filed his complaint with the court only three days after the deadline.

Thus, Langella's appeal of the SSA's April 30, 2003 decision survives.

## II. *Langella's Motions to Deny and Defendants' Memorandums of Law*

Langella claims that Defendants did not timely file their motion to dismiss pursuant to Fed.R.Civ.P. 12(a)(3), which provides that the United States, along with its agencies, officers, and employees, have sixty days in which to answer after the Unit-

ed States Attorney is served with a complaint. Langella served the complaint on the United States Attorney's Office on July 2, 2003, and again on July 10, 2003 (the date on which the complaint was filed). Sixty days from July 2, 2003 was Sunday, August 31, 2003, and September 1, 2003 was Labor Day. Therefore, the Defendants' motion to dismiss was due on September 2, 2003. Fed.R.Civ.P. 6(a).

The Defendants addressed a letter to the Court on August 27, 2003, seeking an extension of time to answer or move to dismiss Langella's complaint. Defendants were granted an extension until October 21, 2003, pursuant to Fed.R.Civ.P. 6(b)(1), which allows the granting of an extension for cause shown if the request is made before the expiration of the period originally prescribed. Defendants' motion to dismiss was therefore timely filed on October 21, 2003.

Langella also claims that Defendants' Reply was untimely. Langella served his response to Defendants' motion to Dismiss on the government on October 31, 2003. Defendants' Reply was thus due by November 7, 2003. On November 5, Defendants requested an extension which the Court granted for an additional two weeks—till November 21, 2003. Defendants' Reply was timely submitted on November 21, 2003.

Additionally, Langella raises issues in his motions against the *pro se* clerk that are not part of this action.

### *Conclusion*

Defendants' motion to dismiss the complaint is granted in part and denied in part, leaving as the sole issue his appeal of

10, 2003. However, the Southern District of New York stamp and *pro se* office records

indicate that his complaint was filed on July 10, 2003.

the SSA decision. Langella's motions are denied.

It is so ordered.